

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00466-CV

MARK LEE NEWBY                                                    APPELLANT

V.

DIANNE MARIE UHL                                                   APPELLEE

----------

### FROM THE 324TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

In what we construe as seven issues, Appellant Mark Lee Newby, pro se, appeals from a divorce decree dissolving his marriage to Appellee Dianne Marie Uhl. We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. BACKGROUND

Newby and Uhl married in 1999. They had one child together, B.N., born in September 1999. Newby worked as a land developer and a builder. Uhl worked for a computer company.

Uhl filed for divorce in the summer of 2009. As part of its temporary orders, the trial court issued a mutual temporary injunction enjoining Newby and Uhl from selling community or separate property and ordered that all oil and gas monies or checks received by Newby be delivered to his then-attorney to be deposited and held in the attorney's escrow account. Uhl obtained a protective order against Newby around the same time; the trial court found that family violence had occurred and was likely to occur in the future, and the court prohibited Newby from, among other things, communicating with and committing family violence against Uhl and B.N. Uhl supplemented her original petition to allege claims against Newby for forgery, fraud, invasion of privacy, and breach of fiduciary duty.

During the pendency of the divorce, Uhl filed motions to compel and for sanctions against Newby for his repeated failure to adequately respond to Uhl's discovery requests. The associate judge ultimately struck Newby's pleadings as a discovery sanction. At the outset of the final bench trial, the trial court stated that it had reviewed and approved the associate judge's recommendation regarding sanctions.

Aside from Uhl's attorney's testimony about fees, Uhl and Newby were the only two witnesses who testified at trial.[2] Uhl testified that Newby had treated her cruelly and that their marriage was unendurable. According to Uhl, Newby wanted to control her "a hundred percent." For example, he would take her cell phone, their cars, her car keys, and her work laptop; he would force her to sign business documents; he would wake her up in the middle of the night, yelling at her; and he would say ugly things about her other son to her. Uhl testified that Newby had a problem with hydrocodone; that he committed adultery; that he would lunge at her and grab her, get in her face, and yell at her; that he dragged her to the balcony and threatened to throw her off of it on one occasion; and that he had harassed and threatened to kill her during the course of the divorce. Uhl also testified about child support, a possession schedule for B.N, and dividing the community property and debt. Newby's testimony is largely highlighted by his evasive answers and his repeated invocation of his Fifth Amendment privilege against self-incrimination.

The corrected final decree of divorce granted the divorce on the grounds of adultery and cruel treatment; appointed Uhl sole managing conservator and Newby possessory conservatory of B.N.; ordered Newby to pay child support to Uhl; divided the marital estate, including the debt; pierced the corporate veils of four business entities owned or controlled by Newby, permitting their assets, if

---

[2]Both Uhl and Newby were represented by counsel at trial.

any, to be characterized as community property; found that Newby had committed fraud by nondisclosure against Uhl, had violated Uhl's privacy, and had breached his fiduciary duty owed to Uhl; awarded Uhl actual damages of $100,000 and exemplary damages of $100,000; ordered Newby to pay attorney's fees; extended the protective order for an additional two years; and permanently enjoined Newby from, among other things, threatening and harassing Uhl. The trial court later amended the protective order to include within its coverage Uhl's attorney, the attorney's law firm, and the attorney's paralegal.[3]

## III. SANCTIONS

In what we construe as his first issue, Newby argues that the trial court abused its discretion by striking his pleadings as a discovery sanction and erred

---

[3]The trial court stated the following at the conclusion of the trial:

> Mr. Newby, we've talked before. I cannot imagine how anyone could have done any worse [of a] job tha[n] you've done in this divorce. You've had five attorneys. All of them I respect. And I cannot imagine that they had much of an influence on you because you wouldn't have done this.

> I don't know how you could have done any worse, as I've said. And that's not even to mention what may be occurring in the bankruptcy court or other criminal courts. I'm just talking about the things you've done in this court which led to your- -to the striking of you[r] pleadings.

> You've just- -I was trying to think during this trial of anything that you've done right. There's almost nothing. You've left the Court with no choice.

4

by failing to conduct a full hearing before approving the associate judge's sanctions recommendation.

Trial courts have broad discretion to impose discovery sanctions to secure compliance with discovery rules, to deter other litigants from similar misconduct, and to punish violators. *See Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992). We therefore review a trial court's imposition of discovery sanctions for an abuse of discretion. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986). In reviewing sanctions orders, we are not bound by a trial court's findings of fact and conclusions of law; rather, we must independently review the entire record to determine whether the trial court abused its discretion. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006).

Texas rule of civil procedure 215.2(b) allows a trial court to sanction a party for failure to comply with a discovery order or request. Tex. R. Civ. P. 215.2(b). Sanctions that a trial court may impose include an order refusing to allow the disobedient party to support or oppose designated claims or defenses and an order striking pleadings or rendering a judgment by default against the disobedient party. Tex. R. Civ. P. 215.2(b)(4), (5).

In discovery-sanction cases, a trial court's discretion is limited by the requirement that the sanctions be just. *TransAmerican Natural Gas Corp. v.*

5

*Powell*, 811 S.W.2d 913, 917–19 (Tex. 1991). A sanction is just if a direct relationship exists between the offensive conduct and the sanctions imposed. *Id.* at 917; *see Chrysler Corp.*, 841 S.W.2d at 849. A direct nexus exists when the sanction is directed against the true offender and is tailored to remedy any prejudice the discovery abuse caused. *TransAmerican*, 811 S.W.2d at 917. To be just, a sanction must also not be excessive. *Id.* The record must reflect that the trial court considered the availability of lesser sanctions. *Otis Elevator Co. v. Parmelee*, 850 S.W.2d 179, 181 (Tex. 1993). A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. *Cire*, 134 S.W.3d at 839.

Here, Uhl filed her first motion to compel discovery and for sanctions against Newby in October 2009. The parties passed on the hearing on the motion to compel, but on November 6, 2009, the trial court ordered Newby to fully and completely answer all discovery previously propounded by Uhl, including her interrogatories and requests for disclosure and for production of documents. In February 2010, Uhl filed a second motion to compel discovery and for sanctions, indicating that Newby had responded to the interrogatories and request for production but complaining that the interrogatory responses were "totally incomplete and evasive" and that the production responses were "evasive and incomplete," and requesting that sanctions be imposed against Newby. Approximately five months later, Newby had still not adequately responded to Uhl's discovery requests, so on or about July 15, 2010, the trial court ordered

6

Newby to completely respond to Uhl's interrogatories and to produce all documents previously requested of him on or before July 29, 2010, and it sanctioned Newby $1,500 for filing frivolous objections to Uhl's discovery requests. Soon after the July 29, 2010 deadline had passed, Uhl filed a third motion to compel discovery and for sanctions against Newby, indicating that he had provided additional responses to Uhl's discovery requests but complaining that the responses continued to be evasive. The trial court granted Uhl's motion and struck Newby's pleadings as a sanction for his discovery abuse.

The trial court's decision to strike Newby's pleadings was just. *See TransAmerican*, 811 S.W.2d at 917–19. The record demonstrates that over the course of between nine months and one year, Uhl was forced to file numerous motions to compel and for sanctions against Newby because of his failure to adequately respond to Uhl's discovery requests. The trial court initially tested lesser sanctions against Newby, but when they proved to be ineffective, it struck his pleadings. A direct relationship exists between Newby's offensive conduct and the sanction, and the sanction is not excessive. Accordingly, we hold that the trial court did not abuse its discretion by striking Newby's pleadings.

Newby contends that the trial court should have conducted a full hearing as part of its review of the associate judge's sanctions recommendation, but nothing in the record shows that he raised this issue in the trial court, nor does the record contain a written notice appealing the associate judge's recommendation and identifying the associate judge's findings and conclusions

7

to which Newby objected.[4]  *See* Tex. R. App. P. 33.1(a); *In re E.M.*, 54 S.W.3d 849, 852 (Tex. App.—Corpus Christi 2001, no pet.) (holding that "to be entitled to a de novo hearing on appeal of an associate judge's recommendations to the referring court, a party must timely file a written notice of appeal containing the associate judge's findings and conclusions to which the party objects").  We overrule Newby's first issue.

## IV. OIL AND GAS INCOME

In what we construe as his second issue, Newby argues that the associate judge erroneously divested him of his separate property when, near the beginning of the case and as part of the temporary orders, she ordered that any oil and gas income received by Newby or one of his businesses be delivered to his then-attorney to be held in her escrow account.  Newby contends that the action "forced an unfair burden on [him and that he] was forced Pro-Se early in the case."[5]  Newby's argument is unpersuasive for several reasons.  While a suit for dissolution of a marriage is pending, the family code specifically authorizes the trial court to "render an appropriate order . . . for the preservation of the property and protection of the parties as deemed necessary."  *See* Tex. Fam.

---

[4]Newby does not assert any argument that he was improperly prohibited from participating in any portion of the final trial on the merits.  *See Paradigm Oil, Inc. v. Retamco Operating, Inc.*, No. 10-0997, 2012 WL 2361725, at *6–7 (Tex. June 22, 2012) (holding that sanction of precluding party from damages portion of trial was excessive).

[5]Newby does not challenge the divorce decree's disposition of separate property.

Code Ann. § 6.502(a) (West 2006). The trial court thus had the authority to direct that the oil and gas income be "preserved" pending the divorce proceedings; the temporary order did not "divest" Newby of the oil and gas income. Further, even if the trial court somehow lacked the authority to preserve Newby's separate property pending the divorce, which it did not, the record on appeal contains no transcript of a temporary-orders hearing at which Newby demonstrated that the oil and gas income was indeed his separate property. Newby could have challenged the trial court's temporary order by filing a petition for writ of mandamus, but he never did. *See Dancy v. Daggett*, 815 S.W.2d 548, 549 (Tex. 1991) (orig. proceeding) (op. on reh'g); *In re Russell*, 321 S.W.3d 846, 853 (Tex. App.—Fort Worth, orig. proceeding [mand. denied]). We overrule Newby's second issue.

### V. RECUSAL

In what we construe as his third issue, Newby argues that the trial judge abused his discretion by not recusing himself.[6]

To recuse a judge, a party must comply with the procedural requirements prescribed by rule of civil procedure 18a. *Rammah v. Abdeljaber*, 235 S.W.3d 269, 274 (Tex. App.—Dallas 2007, no pet.). A motion to recuse must be verified and must not be filed after the tenth day before the date set for trial, unless the

---

[6]The presiding judge of the eighth administrative judicial region denied Newby's motion to recuse.

9

movant neither knew nor reasonably should have known "that the ground stated in the motion existed." Tex. R. Civ. P. 18a(a)(1), (b)(1)(B)(ii).

Here, not only was Newby's motion to recuse not verified, he filed it two to three months *after* the final trial concluded, and the contents of the motion do not show that he was unaware that the grounds stated therein did not exist. We hold that there was no abuse of discretion in the denial of Newby's defective motion to recuse, and we overrule his third issue.

## VI. DIVISION OF COMMUNITY ESTATE

In what we construe as his fourth issue, Newby argues that the trial court abused its discretion by disproportionately dividing the community estate in favor of Uhl.

A trial judge is charged with dividing the community estate in a "just and right" manner, considering the rights of both parties. Tex. Fam. Code Ann. § 7.001 (West 2006); *Watson v. Watson*, 286 S.W.3d 519, 522 (Tex. App.—Fort Worth 2009, no pet.). The court has broad discretion in making a just and right division, and absent a clear abuse of discretion, we will not disturb that division. *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985); *Boyd v. Boyd*, 131 S.W.3d 605, 610 (Tex. App.—Fort Worth 2004, no pet.).

Community property does not have to be divided equally, but the division must be equitable. *Kimsey v. Kimsey*, 965 S.W.2d 690, 704 (Tex. App.—El Paso 1998, pet. denied). In determining whether to disproportionately divide the community estate, the trial court may consider, among other things, a spouse's

10

dissipation of the community estate, any misuse of community property, and fault in the breakup of the marriage. *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981); *Vannerson v. Vannerson*, 857 S.W.2d 659, 669 (Tex. App.—Houston [1st Dist.] 1993, writ denied). When one spouse not only deprives the other of community assets but does so with dishonesty and intent to deceive, the trial court may consider such heightened culpability in its division. *Schlueter v. Schlueter*, 975 S.W.2d 584, 589–90 (Tex. 1998). A disproportionate division must be supported by some reasonable basis. *Smith v. Smith*, 143 S.W.3d 206, 214 (Tex. App.—Waco 2004, no pet.).

Uhl testified that Newby forged her name to several checks, causing her to incur approximately $85,000 in tax liability to the IRS; that Newby routinely transferred ownership of property (including vehicles) between several business entities "to protect them or something"; that Newby made her execute several bank notes (including one so that Newby could get $15,000 cash) that are presently due and owing; that Newby sold property (mineral rights) during the pendency of the divorce despite the trial court's mutual temporary injunction enjoining the parties from disposing of both community and separate property; and that Newby pawned her diamond earrings. Newby testified after Uhl, but instead of contradicting Uhl's testimony, he repeatedly invoked his Fifth

11

Amendment privilege against self-incrimination and evasively answered Uhl's attorney's questions.[7]

A reasonable basis exists for the trial court's decision to disproportionately divide the community estate in favor of Uhl. Accordingly, we hold that the trial court did not abuse its discretion in its equitable division of the marital estate, and we overrule Newby's fourth issue.

## VII. INADEQUATELY BRIEFED ISSUES

In what we construe as his fifth, sixth, and seventh issues, Newby argues that the trial court abused its discretion by awarding attorney's fees, damages for fraud, and custody of B.N. to Uhl. One of our sister courts recently explained,

> We construe liberally pro se pleadings and briefs; however, we hold pro se litigants to the same standards as licensed attorneys and require them to comply with applicable laws and rules of procedure. To do otherwise would give a pro se litigant an unfair advantage over a litigant who is represented by counsel. The law is well established that, to present an issue to this Court, a party's brief shall contain, among other things, a concise, nonargumentative statement of the facts of the case, supported by record references, and a clear and concise argument for the contention made with appropriate citations to authorities and the record. Bare assertions of error, without argument or authority, waive error. When a party fails to adequately brief a complaint, he waives the issue on appeal.

*Washington v. Bank of New York*, 362 S.W.3d 853, 854–55 (Tex. App.—Dallas 2012, no pet.) (citations omitted).

---

[7]At one point, Newby commented, "I plead the fifth. You can't get that through your head." *See Wilz v. Flournoy*, 228 S.W.3d 674, 677 (Tex. 2007) (reasoning that factfinder in civil case may draw negative inference from party's assertion of privilege against self-incrimination); *see also* Tex. R. Evid. 513(c).

Here, Newby's fifth, sixth, and seventh issues consist of these three bullet points:  "•Judgment to pay petitioners absorbent [sic] attorney fees of $93,000"; "•Judgment of $100,000 . . . regarding alleged business fraud"; and "•'Sole' custody of [B.N.], The Child in this matter."  All three issues are waived as inadequately briefed because they are nothing more than bare assertions of alleged error that fail to set forth any argument or authorities.  *See* Tex. R. App. P. 38.1(i); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (discussing "long-standing rule" that issue may be waived due to inadequate briefing).  We overrule Newby's fifth, sixth, and seventh issues.

## VIII.  CONCLUSION

Having overruled all of Newby's issues, we affirm the trial court's judgment.


PER CURIAM

PANEL:  MEIER, GARDNER, and WALKER, JJ.

DELIVERED:  August 2, 2012

13