

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-17-00108-CV

IN THE MATTER OF THE MARRIAGE PEGGY J. MIZE AND LESTER D. MIZE

On Appeal from the 62nd District Court
Franklin County, Texas
Trial Court No. 11891

Before Morriss, C.J., Moseley and Carter,* JJ.
Opinion by Justice Moseley

_____

*Jack Carter, Justice, Retired, Sitting by Assignment

# O P I N I O N

On June 16, 2015, Peggy J. Mize petitioned to divorce her husband, Lester D. Mize, who filed his own counterpetition for divorce. Each party faulted the other for the breakup in the marriage, sued for spousal tort and fraud, and made claims for reimbursement from the community estate. Additionally, Lester asserted a claim for malicious prosecution against Peggy for filing "blatantly false" criminal charges for family violence assault.

While these criminal charges were pending, Lester refused to answer many questions propounded to him during a deposition on the ground that the answers might tend to incriminate him and thus violate his Fifth Amendment rights. In response to Peggy's motion for sanctions against Lester for his refusal to answer questions during the deposition, the trial court prohibited Lester from introducing any evidence in support of his requests for affirmative relief and barred him from testifying at the final hearing. As a result of those sanctions, the trial court granted partial summary judgment in favor of Peggy and then struck Lester's then-amended counterpetition. After a brief hearing, in which Lester did not testify, the trial court entered a final divorce decree that determined, among other things, that Peggy was entitled to a disproportionate share of the community property based on Lester's actions as described in Peggy's motion for summary judgment and that the community estate was required to reimburse Peggy $149,321.00 for separate contribution.

On appeal, Lester argues that the trial court erred in imposing death penalty sanctions against him. Because compliance with *TransAmerican*[1] was not demonstrated on the record, we

---

[1]*See TransAmerican Nat'l Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991) (orig. proceeding).

2

reverse the trial court's judgment, render judgment deleting the assessed sanctions against Lester, and remand the case for further proceedings consistent with this opinion.

## I.    Factual and Procedural Background

Among other things, Peggy's petition alleged that Lester had assaulted her, committed adultery, secreted community assets, fraudulently written checks to third parties which he cashed himself, and conveyed community assets to his sister. Lester alleged that Peggy had also secreted community assets by purporting to invest them in her closely held real estate business and had filed false charges for family violence assault. He filed a no-evidence motion for summary judgment alleging that Peggy had no evidence either that the divorce was his fault or that she was entitled to a claim for reimbursement.

Peggy noticed Lester's deposition for March 27, 2017. On February 20, 2017, Lester's attorney wrote to Peggy's attorney stating that "scheduling Mr. Mize's deposition with criminal charges pending might be futile inasmuch as his criminal attorney will most likely advise him to plead the fifth [sic]." On March 2, 2017, Lester's attorney again wrote, "[A]s I advised previously, Mr. Mize's criminal case is scheduled for a hearing on April 5, 2017[,] and scheduling depositions would more than likely be a waste of time at this point." Lester and his attorney arrived at the March 27 deposition, but were not accompanied by his criminal attorneys.

During his deposition, Lester stated that he never assaulted Peggy, never committed adultery, and did not hide assets during the marriage. However, he refused to answer many questions on the basis that his answer would incriminate him with respect to pending charges,

3

possible criminal charges, and even other matters that were not covered by the Fifth Amendment privilege. As an example, Lester invoked the Fifth Amendment when asked the following:

- "Did you write checks where you were buying assets that didn't exist?"
- "Did you move the $300,000 to your sister or open that account in 2014?"
- "Have you ever written a check . . . and cashed it yourself?"
- "Well, you do realize that by doing what you did with the check, it is against the law?"
- "What medication have you taken in the last week?"
- "So you're telling me that your income tax returns do not reflect what you really earned; is that right?"
- "How much did you declare in income for 2016?"
- "You said you had five lawyers that have worked for you in this case. . . ." "How did you pay you [sic] lawyers?"
- "Do you still have the money in your bank account?"
- "You claim she did something at fault to break up your marriage. . . . What did she do?"
- "[W]here are all your assets?"
- "Have you transferred any assets to your sister during this case?"
- "And you specifically were not required to take early retirement from DPS a result of impropriety and the use of an electric meter in your house, were you?"
- "You've never purchased any livestock from Carol Van Zandt or Andrew Gamble, right? . . . . And that's because you wrote bogus checks to them, didn't you?"
- "And you're telling the Court that you don't believe you ever placed your hands on Ms. Mize in a way that she would have felt threatened?"
- "You called Ms. Mize a b[****] and other derogatory names on numerous occasions during your marriage?"
- "Have you attempted to hide assets from Peggy?"

Throughout the deposition, although he later answered several questions related to his financial information, Lester repeatedly indicated, "I'm going to claim my Fifth Amendment, I guess, anything that has to do with financials, anything."[2] When shown a list of property, the following

---

[2]Lester named his bank accounts and estimated the amount of money in them, discussed the source of funding in those accounts, and answered several questions related to his other assets.

4

discussion ensued between Lester and Peggy's counsel and was highlighted in Peggy's motion for sanctions:

Q  So you're not going to be able to testify at the time of trial on the value of any of the assets on Exhibit No. 7 is what you're saying?

A  No, I'm not saying that.

Q  Well, today, I'm asking you questions, the same as if you were in open court giving testimony.  And if you aren't going to answer them today, I'm going to argue you can't answer them then, so you are going forward of your own risk, so I'm making sure you know what I'm doing.  I'm asking you whether you agree or disagree with those values on Exhibit No. 7.  Do you understand my question?

A  I'm going to decline based on my Fifth Amendment right.

. . . .

Q  So if I ask you line for line whether this value placed here is accurate, you're not going to answer that; is that a fair statement?

A  That's a fair statement.

Q  All right.  And at the time of trial, you're not going to be able to answer them either; do you understand that?

A  No.  I will answer them at the time of trial.

Q  Well, sir, so what you're saying is you're taking the Fifth Amendment today and you intend to take a different position at the time of trial?

A  Yes.  I'm not going to be badgered in a -- in a trial.

Q  So you're doing this solely to block discovery, is what you're saying, so I won't be able to find out what your values are until we go to trial?

A  That's correct.

Q  You understand the Court can sanction you for your actions?

A  I don't know what you mean by that.

5

Additionally, Lester also refused to identify documents, including cancelled checks which had been produced to Peggy's counsel. Several times during the deposition, Lester stated that his refusal to answer was based "[o]n advice of counsel."[3] He stated, "If it's not involved in my criminal case -- if it's involved in my -- this criminal case, my counsel has advised me not to answer any questions based on my -- I take the Fifth." The deposition does not reflect that Lester's civil attorney, who was present at the deposition, or opposing counsel made an effort to explain why Lester could not invoke the Fifth Amendment with respect to many of the propounded questions.[4]

---

[3]Lester's claim that his refusal to answer was advised by his attorneys is supported by the following excerpts:

Q      What counsel gave you the advice to take a Fifth Amendment regarding whether you've seen a doctor in the last 12 months?
A      I'd say all three lawyers.
Q      The lawyer sitting here today gave you that advice?
A      I have that right.
Q      Didn't say whether you had the right, sir. I'm asking what lawyer gave you the advice --
       [Lester's Attorney]: Objection, privileged.
. . . .
Q      So you don't recall talking to Dr. Kahn?
. . . .
A      I decline to answer that, sir.
. . . .
Q      Fifth Amendment right, you believe, protects you from answering that question?
A      I believe it does.
Q      All right. Where did you get your law degree, sir?
. . . .
       [Lester's attorney]: Objection, harassment.
. . . .
Q      And you believe the Fifth Amendment right of incrimination protects you from whether or not you've seen a doctor?
A      I don't know, sir, what -- what it -- what it protects me from but I -- I'm claiming it anyway.

[4]During his deposition, Lester also stated that he (1) did not know what separate property was, (2) did not know what assets he had asked to be awarded to him, (3) and stated, "Well, I have not understood everything and you're going too fast. You're pushing me and so I may have answered improperly, not realizing what I was doing, sir."

6

On May 4, 2017, Peggy filed a motion for sanctions on the ground that Lester was wrongfully attempting to block discovery through his improper invocation of the Fifth Amendment "approximately 100 times" during the deposition. Among other items of relief, the motion requested that the trial court sanction Lester by striking his pleadings, rendering default judgment against him, barring any of his claims for affirmative relief, and disallowing him to present any evidence at trial and barring his opposition "on issues about which he took the Fifth Amendment at his deposition." After Lester responded to the motion for sanctions, the trial court held a hearing on the matter.

During the May 12, 2017 hearing, Lester's counsel admitted the February 20 and March 2 letters and stated that she had several conferences with Peggy's attorney warning that Lester had been advised to plead the Fifth Amendment. Lester's counsel further stated that he was anxious and frightened and had refused to answer questions "regarding not only the pending criminal case but potential criminal cases that Mrs. Mize continues to bring to the authorities to have additional charges filed against Mr. Mize." She assured the trial court that Lester was not attempting to thwart discovery and urged the trial court not to strike his pleadings. The trial court concluded:

> [T]he Court finds that Respondent does have an absolute right to invoke his Fifth Amendment privilege; however, the Court finds in this case he has invoked the privilege and is subterfuge to abuse the discovery process. After considering the appropriate [sic] and limiting the sanctions with regard to Respondent's conduct, the Court is going to prohibit Respondent from testifying in the final hearing in this matter. In addition, Respondent will be prohibited from introducing any evidence on his affirmative request for relief in his pleadings.

Those oral findings were memorialized in a written order granting Peggy's motion for sanctions.

7

On August 1, 2017, in light of the trial court's ruling on the sanctions motion, Peggy filed a motion for partial summary judgment, arguing that (even though Lester answered some of the questions posed to him during his deposition) he could not present affirmative defenses and that no fact issue existed. She signed an affidavit attaching various documents in support of her motion for summary judgment.[5] Lester responded to the motion by attaching his own affidavit averring that he was acquitted of criminal charges on July 18, 2017, and did not invoke the Fifth Amendment for the purpose of thwarting discovery. In response to that affidavit, Peggy again moved to strike Lester's petition and his affidavit.

The trial court struck Lester's affidavit and third-amended counterpetition and granted Peggy's motion for partial summary judgment, leaving only the issue of property characterization with respect to certain assets. A final judgment was entered on September 27, 2017.

## II. Compliance with *TransAmerican* Is Not Shown by the Record

"The United States Constitution both guarantees that a person may not be compelled to testify or give evidence against h[im]self." *In re Ferguson*, 445 S.W.3d 270, 274–75 (Tex. App.— Houston [1st Dist.] 2013, orig. proceeding) (citing U.S. CONST. amend. V; *Maness v. Meyers*, 419 U.S. 449, 461 (1975)). "A party may invoke his Fifth Amendment privilege against self-incrimination in a civil proceeding if he reasonably fears that the answer sought might incriminate him." *Dunne v. Brinker Tex., Inc.*, No. 05-16-00496-CV, 2017 WL 3431465, at *3 (Tex. App.— Dallas Aug. 10, 2017, pet. denied) (mem. op.) (citing *United States v. Balsys*, 524 U.S. 666, 671–

---

[5]*See Sundance Res., Inc. v. Dialog Wireline Servs., L.L.C.*, No. 06-08-00137-CV, 2009 WL 928276, at *4 (Tex. App.—Texarkana Apr. 8, 2009, no pet.) (mem. op.) (setting forth the requirements of an affidavit).

72 (1998)). The privilege may be invoked "during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents." *Ferguson*, 445 S.W.3d at 276 (quoting *Davis–Lynch v. Moreno*, 667 F.3d 539, 547 (5th Cir. 2012)).

Yet, a party "seeking affirmative relief should not be permitted to use his Fifth Amendment privilege offensively by maintaining a suit and, at the same time, claim privilege to prevent the [other party] from obtaining information needed to prepare a defense." *Dunne*, 2017 WL 3431465, at *3 (citing *Tex. Dep't of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 760 (1995)). "Thus, when a civil plaintiff uses his Fifth Amendment privilege offensively and refuses to comply with discovery, a trial court has the authority to impose sanctions authorized by the rules of procedure, including death penalty sanctions,"[6] but only after the trial court has "consider[ed] whether remedial steps can alleviate the problem." *Id.* (citing TEX. R. CIV. P. 215; *Denton*, 897 S.W.2d at 760). Additionally, sanctions can also be imposed for the wrongful invocation of the Fifth Amendment.

Because "[t]rial courts have broad authority to impose appropriate sanctions on recalcitrant litigants," "[w]e review a trial court's ruling on a motion for sanctions for abuse of discretion." *Altesse Healthcare Sols., Inc. v. Wilson*, 540 S.W.3d 570, 572, 573–74 (Tex. 2018) (per curiam) (citing *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004); *In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) (per curiam) (orig. proceeding). "That authority is not, however, without limits." *Id.*

---

[6]"Any sanction that adjudicates a claim and precludes the presentation of the merits of the case constitutes a death penalty sanction." *Adkins Servs., Inc. v. Tisdale Co.*, 56 S.W.3d 842, 845 (Tex. App.—Texarkana 2001, no pet.). We find that the trial court's sanctions, which precluded presentation of the merits of Lester's counterpetition and all requests for affirmative relief, constituted death penalty sanctions.

at 572. Further, we examine the entire record in determining whether a trial court abused its discretion in issuing death penalty sanctions. *See Am. Flood Res., Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam); *see also Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 852 (Tex. 1992).

"Although sanctions intended to secure compliance with court orders and deter noncompliance are often essential to the orderly conduct of trial-court proceedings, our precedent dictates that courts should avoid a 'trial by sanctions' whenever possible." *Altesse Healthcare*, 540 S.W.3d at 575 (citing *TransAmerican*, 811 S.W.2d at 918 (holding that death penalty sanction was not justified by party's failure to appear at deposition)). "Sanctions so severe that they prevent a decision on the merits are not justified except in the most severe cases of flagrant bad faith." *Id.* This is because "sanctions, and death-penalty sanctions in particular, cannot be used to effectively adjudicate the merits of a case unless the offending party's conduct justifies a presumption that its claims or defenses lack merit." *Id.* at 576 (citing *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 184 (Tex. 2012); *TransAmerican*, 811 S.W.2d at 918).

"A trial court's discretion is limited by the requirements that sanctions be 'just' and comport with due process." *Palau v. Sanchez*, No. 03-08-00136-CV, 2010 WL 4595705, at *7 (Tex. App.—Austin Nov. 10, 2010, pet. denied) (mem. op.) (citing Tex. R. Civ. P. 215.2(b); *TransAmerican*, 811 S.W.2d at 917); *see Altesse Healthcare*, 540 S.W.3d at 574–75. "Restrictions on extreme discovery sanctions also flow from the recognition that '[t]here are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action

without affording a party the opportunity for a hearing on the merits of his cause.'" *Altesse Healthcare*, 540 S.W.3d at 575 (quoting *TransAmerican*, 811 S.W.2d at 918).

In *TransAmerican*, the Texas Supreme Court held that in order for a sanction to be just, "a direct relationship must exist between the offensive conduct and the sanction imposed" and that "sanctions must not be excessive." *Id.* (quoting *TransAmerican*, 811 S.W.2d at 917). "In other words, a court imposing sanctions must seek to ensure that '[t]he punishment . . . fit[s] the crime.'" *Id.* at 572 (quoting *TransAmerican*, 811 S.W.2d at 917). "This means that a just sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party." *TransAmerican*, 811 S.W.2d at 917. "It also means that the sanction should be visited upon the offender." *Id.* "A party should not be punished for counsel's conduct in which it is not implicated apart from having entrusted to counsel its legal representation." *Id.* "The trial court must at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both." *Id.*

Here, the record demonstrates that Lester's civil counsel was present during his deposition. She had previously written to Peggy's counsel to warn him that scheduling the deposition would be futile because Lester had been instructed by his criminal lawyer to invoke the Fifth Amendment in response to questioning. During the deposition, Lester raised the privilege with respect to matters not covered by the Fifth Amendment protection, but repeatedly cited that he was doing so based on the advice of his counsel. When it is clear that the party believes he has a Fifth Amendment privilege, and the trial court does not inquire whether the party or his attorney was responsible for that belief, there is no evidence that the sanctions were visited on the actual

11

offender. *See Risinger v. Beal Bank, S.S.B.*, No. 01-99-00551-CV, 2001 WL 126127, at *1 (Tex. App.—Houston [1st Dist.] Feb. 15, 2001, no pet.) (not designated for publication) (citing *TransAmerican*, 811 S.W.2d at 917); *see also Hernandez v. Polley*, No. 03-15-00384-CV, 2016 WL 6068259, at *4 (Tex. App.—Austin Oct. 13, 2016, no pet.) (mem. op.).[7]

Moreover, the Texas Supreme Court has also held that "sanctions cannot be 'more severe than necessary to satisfy the legitimate purposes of sanctions." *Altesse Healthcare*, 540 S.W.3d at 575 (quoting *Chrysler Corp.*, 841 S.W.2d at 850).[8] This requires a trial court "to consider the availability of lesser sanctions before imposing death penalty sanctions." *Id.* at 576 (quoting *Cire v. Cummings*, 134 S.W.3d 835, 840 (Tex. 2004) (emphasis omitted)). It "must either consider lesser sanctions on the record or test lesser sanctions." *Knoderer v. State Farm Lloyds*, No. 06-13-00027-CV, 2014 WL 4699136, at *10 (Tex. App.—Texarkana Sept. 19, 2014, no pet.) (mem. op.) ("[I]n all but the most exceptional cases, the trial court must actually test the lesser sanctions before striking the pleadings.") (quoting *Cire*, 134 S.W.3d at 840). "[C]ase-determinative sanctions may be imposed only in exceptional cases where they are clearly justified and it is 'fully apparent that no lesser sanctions would promote compliance with the rules.'" *Id.* at *11 (quoting *Cire*, 134 S.W.3d at 840–41 (citing *Ross v. Nat'l Ctr. for the Empl. of the Disabled*, 197 S.W.3d 795, 798 (Tex. 2006) (per curiam) (death penalty sanctions not appropriate as initial step)). "Thus,

---

[7]Additionally, although Lester testified that he never assaulted Peggy, he was barred from presenting evidence of his claim for malicious prosecution. Lester also answered several questions related to his assets, bank accounts, bank balances, and source of funding for his accounts and stated that he never committed adultery or hid assets.

[8]"Accordingly, so-called death-penalty sanctions, under which the offending party essentially loses the case because of the sanction, are generally reserved for the most egregious cases in which the offending party's conduct justifies a presumption that its claims lack merit." *Altesse Healthcare*, 540 S.W.3d at 572 (citing *Paradigm Oil, Inc.*, 372 S.W.3d at 184).

a trial court either must impose lesser sanctions first or must clearly explain on the record why the case is an exceptional case where it is fully apparent that no lesser sanctions could promote compliance." *Id.* A mere recitation in an order "that no lesser sanction 'would be adequate punishment'" is insufficient where the record demonstrates that "the court did not duly consider whether some lesser sanction would appropriately punish the defendants' conduct" before awarding death penalty sanctions. *Altesse Healthcare*, 540 S.W.3d at 576.

Here, Peggy did not seek to compel Lester to appropriately answer the questions in which he was unable to claim a Fifth Amendment privilege. Unlike many cases where death penalty sanctions have been upheld, Lester was not instructed that his failure to answer counsel's questions could result in stricken pleadings and his inability to present evidence at trial, even in defense to Peggy's petition. Critically, the record reveals no compliance with the Texas Supreme Court's mandate to "analyze the available sanctions and offer a reasoned explanation as to the appropriateness of the sanction imposed." *Cire v. Cummings*, 134 S.W.3d 835, 840 (Tex. 2004). Thus, "[e]rror occurred in the absence of either testing lesser sanctions[9] or explaining why this

---

[9]Possible lesser sanctions could include any or all of the following:
1.      Ordering Lester to be deposed again, at his own expense, with an instruction to answer all questions in which the Fifth Amendment right to be free from self-incrimination does not apply,
2.      Warning Lester that failure to answer counsel's questions will result in exclusion of his testimony,
3.      Ordering Lester to pay the expenses incurred by Peggy when taking the first deposition and prosecuting her motion for sanctions, and
4.      Any other sanction permitted by Rule 215 of the Texas Rules of Civil Procedure.

case is an extreme case where lesser sanctions would not be adequate." *Knoderer*, 2014 WL 4699136, at *11.

We sustain Lester's first point of error.[10]

## III.    Conclusion

We reverse the judgment of the trial court.  We render judgment deleting all sanctions against Lester and remand this case to the trial court for further proceedings consistent with our opinion.

Bailey C. Moseley
Justice

Date Submitted:    June 27, 2018
Date Decided:    August 1, 2018

---

[10]Our ruling on this matter is dispositive of the appeal.

14