PARADIGM OIL, INC., Pacific Operators, Inc., Pacific Operators of Texas, Inc. and Finley Oil Well Service, Inc., Petitioners,

v.

RETAMCO OPERATING, INC., Respondent.

No. 10–0997.

Supreme Court of Texas.

Argued Feb. 9, 2012.

Decided June 22, 2012.

Rehearing Denied Aug. 17, 2012.

Susan S. Vance, Douglas W. Alexander, Alexander Dubose & Townsend, LLP, Thomas R. Phillips, Dustin Mark Howell, Baker Botts, LLP, Austin, TX, Juan M. Castillo, Roger G. Bresnahan, Farrimond Castillo & Bresnahan PC, Jeffrey D. Small, Law Office of Jeff Small, San Antonio, TX, Leslee N. Haas, Hays McComm Rice & Pickering, Houston, TX, Craig Price, Nathan C. Rogers, Griffith & Thornburgh, LLP, Santa Barbara, CA, Charles Rudolph Grebing, Wingert Grebing Brubaker & Juskie LLP, San Diego, CA, for Paradigm Oil, Inc.

James L. Drought, Calhoun Bobbitt, Drought Drought & Bobbitt LLP, Timothy Patton, Timothy Patton, PC, San Antonio, TX, for Retamco Operating, Inc.

Justice MEDINA delivered the opinion of the Court.

Texas Rule of Civil Procedure 215.2(b)(5) authorizes a trial court to render a default judgment against a defendant for discovery abuse, justice and due process permitting. Commonly known as the death-penalty sanction, it is the remedy of last resort.

Discovery abuse in this case caused the trial court to strike the defendants' answer and render a default judgment. In addition to striking the defendants' answer, the discovery sanction also barred the defendants from contesting the plaintiff's damages. Because these damages were unliquidated, however, the plaintiff was required to prove them at an uncontested hearing.

The defendants do not deny their discovery abuse, nor do they question the trial court's decision to strike their pleadings and render judgment by default. Rather, they complain that the trial court abused its discretion by barring them from the damages trial. The defendants maintain that this extension of the death-penalty sanction was excessive, unjust, and therefore an abuse of discretion.

The court of appeals did not agree, holding that the discovery sanction was neither excessive nor an abuse of the trial court's discretion. The court of appeals, however, remanded the case twice on legal insufficiency grounds before affirming the uncontested damages award in this, the third appeal. *See Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 161 S.W.3d 531 (Tex. App.-San Antonio 2004, pet. denied) (*Paradigm I* ), *on remand*, 242 S.W.3d 67 (Tex. App.-San Antonio 2007, pet. denied) (*Paradigm II* ), *on remand*, 330 S.W.3d 342 (Tex.App.-San Antonio 2010) (*Paradigm III* ). Because we conclude that the defaulted defendants should have been permitted to participate in the hearing on unliquidated damages, we reverse the court of appeals' judgment and remand the case to the trial court for further proceedings.

I

■■■ The case arises out of the conveyance of oil and gas properties by Retamco Operating, Inc. almost thirty years ago. Following an economic downturn in 1984, Retamco conveyed 572 oil and gas leases to PNB Securities Corporation under a debt workout agreement (the 1984 Agreement). The agreement was complex. Under it, Retamco retained certain rights, including overriding royalty interests [1] and after-payout working interests [2] in certain wells PNB financed. The 1984 Agreement further allowed Retamco to continue operating certain leases in production, entitled Retamco to notice of lease terminations, sales, or assignments, and granted Retamco the option to retain certain leases that might otherwise terminate. Retamco was also to be notified when certain wells reached payout so it could elect to share in the working interest. The agreement obligated PNB to prepare a document describing Retamco's rights and record it in all applicable counties. PNB was further to notify those acquiring an interest in any of the leases of Retamco's rights and interests under the 1984 Agreement.

In 1999, Retamco sued multiple parties for damages under the 1984 Agreement. By the time of the suit, PNB had divested itself of all the leases covered under the agreement, with the last sixty-two leases having been sold to Paradigm Oil, Inc. in 1993. Before this sale, Paradigm operated one of the leases for PNB for a number of years.

Retamco's suit named both PNB and Paradigm as defendants. Retamco also joined other defendants, including PNB's successor, Bank of America,[3] and three

---

1. "An overriding royalty is an interest in the oil and gas produced at the surface, free of the expense of production." *Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 542 (Tex. App.-Austin 1999, pet. denied).

2. "A working interest is the right to share in well production, subject to the costs of exploration and development. Payout is reached when the costs of drilling and equipping the well are recovered from production." *Id.* at 543.

3. Retamco ultimately settled with Bank of America, PNB's successor, for $1.25 million. Around the same time, Retamco also became involved in lawsuits with other entities which had acquired some of the 572 leases included under the 1984 Agreement. These suits settled with Retamco giving up its rights in the

Paradigm affiliates, Pacific Operators, Inc., Pacific Operators of Texas, Inc., and Finley Oilwell Service, Inc.[4] Alleging breach of contract and fraud, Retamco complained that it had not been notified of well proposals as required under the 1984 Agreement and had thereby lost the opportunity to participate in several wells. Retamco also accused Paradigm of overcharging for operating expenses and otherwise diverting proceeds, which allegedly caused Retamco to lose royalty and working-interest revenues. Retamco further alleged that Paradigm had succeeded to PNB's obligations under the 1984 Agreement by its purchase of the sixty-two leases in 1993 and was therefore jointly and severally liable for its damages.

Paradigm denied Retamco's allegations but after answering the lawsuit generally refused to participate in discovery. Retamco sought sanctions. The trial court conducted hearings on the matter, and Paradigm was ordered to pay discovery-related expenses and to provide discovery. When Paradigm failed to meet the trial court's discovery deadline, Retamco again moved for sanctions. Another hearing was conducted after which the court granted Retamco's motion, striking Paradigm's answer and rendering a $1.6 million default judgment.[5] In sanctioning Paradigm for discovery abuse, the trial court's order not only precluded Paradigm from contesting its liability but also Retamco's damages, stating:

> Paradigm Oil, Inc., Pacific Operators, Inc. and Pacific Operators of Texas, Inc., may not, and are disallowed to, oppose Plaintiff's ... claims to over-

riding royalty interests, damages, exemplary damages, pre-judgment interest, or attorney's fees, whether by cross examination, objection to evidence offered, or offer of evidence[.]

Paradigm moved for a new trial, produced everything it believed Retamco requested, and offered to reimburse Retamco's legal expenses. The trial court denied the motion and thereafter severed the default judgment into a separate cause, making it a final judgment. Paradigm appealed.

The court of appeals affirmed the discovery sanction in the first appeal but did not affirm the default judgment itself. *See Paradigm I*, 161 S.W.3d at 534. Concluding that the record contained no evidence to support the $1.6 million award, the court reversed the judgment and remanded the case for a new damages hearing. *Id.* at 540. Meanwhile in the trial court, Retamco obtained a similar death-penalty sanction against Finley, the Paradigm affiliate that had not been included in the previous default judgment.

After the remand in *Paradigm I*, Retamco endeavored to prove its damages in two separate trials—one against Paradigm and affiliates Pacific Operators and Pacific Operators of Texas and the other against Finley. The two trials together resulted in approximately $5.6 million in actual damages and $40 million in punitive damages ($10 million for each of the four defendants). Paradigm and Finley separately appealed their respective judgments, and the court of appeals again reversed, holding the evidence to be legally insufficient to support the damages awarded in

leases acquired by Andarko Petroleum and Crimson Oil for a total of $1.3 million.

4.  Unless the context requires otherwise, Paradigm and affiliates Pacific Operators and Pacific Operators of Texas are hereafter collectively referred to as Paradigm. Paradigm's

other affiliate, Finley, took a different track in the early years of the litigation and is generally referred to by name.

5.  The $1.6 million judgment included $750,000 in exemplary damages.

either trial. *See Paradigm II,* 242 S.W.3d at 69; *Finley Oilwell Serv., Inc. v. Retamco Operating, Inc.,* 248 S.W.3d 314 (Tex. App.-San Antonio 2007, pet. denied).

After these reversals, the severed actions against Paradigm and Finley were consolidated for a fourth damages trial. Once again the defendants were not permitted to participate. At the conclusion of this uncontested trial, Retamco was awarded more than $35 million, which included $20 million in exemplary damages. On the third appeal, the court of appeals reduced the judgment by $1.25 million [6] but otherwise affirmed the trial court's judgment. *See Paradigm III,* 330 S.W.3d at 347. As it had done in the previous two appeals, Paradigm petitioned this Court for review.

## II

■ Paradigm's petition does not contest the trial court's decision to strike its answer as a discovery sanction or the default judgment rendered against it on liability. Paradigm's appeal focuses instead on its exclusion from the trial on damages. As a general rule, a defaulted defendant has the right to participate in such a trial when, as here, the plaintiff's damages are unliquidated. *Rainwater v. Haddox,* 544 S.W.2d 729, 733 (Tex.Civ.App.-Amarillo 1976, no writ) (citing, *inter alia, Maywald Trailer Co. v. Perry,* 238 S.W.2d 826, 827–28 (Tex.Civ.App.-Galveston 1951, writ ref'd n.r.e.)). Paradigm contends that the trial court therefore abused its discretion by extending the discovery sanction to bar its participation at this trial.

Retamco responds that Paradigm waived this complaint by not raising the issue in the court of appeals. It points out that Paradigm's most recent brief in the court of appeals complained about several things but not about the discovery sanction itself. Even though the court of appeals previously upheld the sanction in the first appeal, Retamco maintains that Paradigm needed to brief and argue the issue in the court of appeals once again to preserve it for our review.

■ Retamco's argument, however, ignores the law-of-the-case doctrine. Under this doctrine, a decision rendered in a former appeal of a case is generally binding in a later appeal of the same case. *Briscoe v. Goodmark Corp.,* 102 S.W.3d 714, 716 (Tex.2003). Having decided the issue in *Paradigm I,* the court of appeals was not obligated to reconsider the matter in subsequent appeals. *Id.* Neither was Paradigm required to reargue the issue in a court that already decided the matter.

Such a requirement would undermine the doctrine's purpose, which is to bring an end to litigation by winnowing the issues in each successive appeal. *Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex.1986). By narrowing the issues in successive appeals, the law-of-the-case doctrine further seeks to promote efficiency and uniformity in the decision-making process. *Id.* Requiring a party to reargue issues previously lost in the court of appeals as a predicate to this Court's review would obviously work at cross-purposes to the doctrine.

The court of appeals determined in the first appeal that the trial court did not abuse its discretion in denying Paradigm the right to participate in the post-default damages hearing. *See Paradigm I,* 161 S.W.3d at 537–38. That decision on Paradigm's participation became the law of the case for future proceedings in those courts. It did not, however, become the law of the case in this Court. Although we declined to review the matter in *Paradigm I,* our

---

**6.** The reduction represented a settlement credit for the amount previously paid by Bank of America to Retamco in the underlying litigation.

decision to deny Paradigm's petition for review in that appeal did not invoke the doctrine. *See Loram Maint. of Way, Inc. v. Ianni,* 210 S.W.3d 593, 596 (Tex.2006) (holding that law-of-the-case doctrine is inapplicable when this Court simply denies a petition because the denial is not a decision on the merits). It was appropriate then for Paradigm to raise the issue again in this Court, even though it did not reargue it in the court of appeals. Paradigm's previous complaint about the death-penalty sanction in *Paradigm I* preserved the issue for our review, and we turn now to the merits of that complaint.

### III

As to the merits, the parties disagree about the underlying nature of the default judgment in this case. Paradigm argues that the discovery sanction should be treated like a no-answer default judgment. It submits that, by striking its answer, the discovery sanction put it in the same position as though it had never answered the suit. Because a defendant who defaults by failing to answer a lawsuit ordinarily retains the right to participate in any subsequent trial to determine unliquidated damages, Paradigm contends that it should similarly have that right in this case. It concludes that the trial court therefore abused its discretion in denying it the right to participate.

Retamco, on the other hand, maintains that a default judgment from a discovery sanction is different from a no-answer default judgment. A defendant who simply fails to answer a lawsuit, according to Retamco, is less culpable than a defendant that answers and abuses the discovery process. Retamco contends that different

rules apply because of the discovery abuse and that such rules include trial court discretion to bar the defendant's participation at the damages hearing, as was done here.

■■ The parties' arguments recognize that default judgments are not all alike and that different rules apply in different circumstances. For example, a default judgment caused by a defendant's failure to answer after service is treated differently from a default judgment caused by a defendant's failure to appear for trial after answering a suit. *Jatoi v. Decker, Jones, McMackin, Hall & Bates,* 955 S.W.2d 430, 432 (Tex.App.-Fort Worth 1997, pet. denied); Tex.R. Civ. P. 239. In the latter instance, a post-answer default "constitutes neither an abandonment of the defendant's answer nor an implied confession of any issues thus joined by the defendant's answer." *Stoner v. Thompson,* 578 S.W.2d 679, 682 (Tex.1979). Because the merits of the plaintiff's claim remain at issue, judgment cannot be rendered on the pleadings, and the plaintiff must prove its claim. *Id.* By contrast, the non-answering party in a no-answer default judgment is said to have admitted both the truth of facts set out in the petition and the defendant's liability on any cause of action properly alleged by those facts. *Morgan v. Compugraphic Corp.,* 675 S.W.2d 729, 731 (Tex.1984). The defendant's default thus establishes liability, but a trial may still be necessary if the plaintiff's damages are unliquidated. *Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 83 (Tex.1992); Tex.R. Civ. P. 243. And as a general rule, a defendant who has not answered but nevertheless appears at the post-default hearing on damages is entitled to participate.[7]

---

7. *Kerulis v. Granbury Lake Props., Inc.,* 2006 Tex.App. LEXIS 5720, at *9, 2006 WL 1791617, at *3 (Tex.App.-Fort Worth 2006) (mem. op.); *Kirkpatrick v. Mem'l Hosp. of* *Garland,* 862 S.W.2d 762, 773 (Tex.App.-Dallas 1993, writ denied); *Ne. Wholesale Lumber, Inc. v. Leader Lumber, Inc.,* 785 S.W.2d 402, 407 (Tex.App.-Dallas 1989, no writ); *May-*

■ Although default judgments may generally be categorized as pre- or post-answer, other variations exist.[8] A default judgment as a discovery sanction is one variation that does not fit neatly into either general category. When a trial court strikes a defendant's answer as a discovery sanction, the resulting default is technically post-answer, but it is also, as Paradigm contends, similar to a no-answer default judgment. Indeed, some courts have analogized the death-penalty discovery sanction to a no-answer default judgment, finding "no distinction in the treatment of cases between those where the defendant failed to answer in a lawsuit and where the defendant's answer has been stricken from the record as a result of the imposition of sanctions." *Fiduciary Mortg. Co. v. City Nat'l Bank of Irving*, 762 S.W.2d 196, 200 (Tex.App.-Dallas 1988, writ denied); *see also In the Matter of Gober*, 100 F.3d 1195, 1205 (5th Cir.1996); *Assicurazioni Generali, S.p.A. v. Milsap*, 760 S.W.2d 314, 317 (Tex.App.-Texarkana 1988, writ denied); *City of Dallas v. Cox*, 793 S.W.2d 701, 728 (Tex.App.-Dallas 1990, no writ).

Even though a death-penalty discovery sanction may be similar to a no-answer default judgment, it is not the same for all purposes. This type of default judgment implicates not only the broader principles that apply to default judgments generally but also the rules that apply to discovery abuse, specifically those principles that control the use of a case-ending discovery sanction. *See TransAmerican Natural*

*Gas Corp. v. Powell*, 811 S.W.2d 913 (Tex. 1991) (explaining the limitations on death-penalty sanctions). Our review must thus take into consideration both general default judgment principles and our discovery rules.

■■ Our discovery rules provide a variety of sanctions for discovery abuse. *See generally* Tex.R. Civ. P. 215. The law requires, however, that any sanction imposed by the trial court must be "just," *id.* 215.2(b), and we have said that two factors mark the bounds of a "just" sanction. First, a direct relationship between the offensive conduct and the sanction imposed must exist. *TransAmerican*, 811 S.W.2d at 917. Second, the sanction imposed must not be excessive. *Id.* The most extreme sanctions are also limited by due process considerations. Thus, a death-penalty sanction cannot be used to adjudicate the merits of claims or defenses unless the offending party's conduct during discovery justifies a presumption that its claims or defenses lack merit. *Id.* at 918.

Here, the death-penalty sanction not only adjudicated the merits of Paradigm's defense but also denied it the right to participate in the trial to determine actual damages, punitive damages, and attorneys' fees, all of which were unliquidated. Because the plaintiff's damages were unliquidated, the court of appeals observed that the trial court had to hear evidence. *Paradigm I*, 161 S.W.3d at 537 (citing Tex.R. Civ. P. 243). But the court of appeals also concluded that the required hearing could

---

*wald Trailer Co. v. Perry*, 238 S.W.2d 826, 827 (Tex.Civ.App.-Galveston 1951, writ ref'd n.r.e.).

**8.** A third type of default judgment, the judgment nihil dicit, is similar to, and treated much the same as, a no-answer default judgment. *Stoner v. Thompson*, 578 S.W.2d 679, 683 (Tex.1979). This type of default is usually "limited to situations in which either (1) the defendant has made a plea, usually dilatory in

nature, but the pleading has not placed the merits of the plaintiff's case in issue before it is overruled, or (2) the defendant has placed the merits of the case in issue by filing an answer, but has withdrawn that answer." 7 William V. Dorsaneo III, Texas Litigation Guide § 100.01[3] at 100–11 (2011) (citing *Frymire Eng'g Co. v. Grantham*, 524 S.W.2d 680, 681 (Tex.1975)).

be one-sided; it held that the trial court could in its discretion both "render a default judgment as sanctions and [ ] deny the offending party the right to oppose the damages evidence." *Paradigm I,* 161 S.W.3d at 538 (citing TEX.R. CIV. P. 215.2(b)(4)). The court reasoned that this discovery sanction was not excessive because the trial court had tried lesser sanctions to no avail and because Paradigm's repeated misconduct demonstrated "bad faith in the litigation process as a whole." *Id.* at 539. The court of appeals cited one other Texas case that approved the use of a similar discovery sanction. *Id.* at 538 (citing *In re Dynamic Health, Inc.,* 32 S.W.3d 876, 880 (Tex.App.-Texarkana 2000)).

Paradigm argues that *Dynamic Health* is either distinguishable on its facts (because there was evidence that the defendant had intentionally destroyed evidence bearing on the plaintiff's claim for damages, 32 S.W.3d at 884) or is in conflict with the weight of Texas authority, exemplified by *Rainwater v. Haddox,* 544 S.W.2d 729, 733 (Tex.Civ.App.-Amarillo 1976, no writ).[9] *Rainwater* held that at the hearing to determine damages after a default judgment, "the defendant has the right to be present, to interpose objections to testimony offered by plaintiff's witnesses and to cross-examine them in order that by the exclusion of improper evidence, a proper judgment may be rendered on competent and sufficient evidence." *Id.* Paradigm complains that the court of appeals here neither cited nor distinguished *Rainwater* and its progeny, nor addressed or expressly overruled its own prior precedent in this line of cases. *See Welex, Div. of Halliburton Co. v. Broom,* 806 S.W.2d 855, 864 (Tex.App.-San Antonio 1991), *vacated on other grounds,* 816 S.W.2d at 340 (Tex.1991); *Brantley v. Etter,* 662 S.W.2d 752, 756 (Tex.App.-San Antonio 1983) (citing *Rainwater*).[10]

We agree with Paradigm that the general rule in this state and elsewhere is that a defaulted party may participate in the post-default damages hearing. *See, e.g., Payne v. Dewitt,* 995 P.2d 1088, 1095 (Okla.1999) (stripping the defaulted defendant "of basic due process truth-testing devices is contrary to the orderly process of assessing damages"); *Bashforth v. Zampini,* 576 A.2d 1197, 1200–01 (R.I. 1990) (holding that in a hearing on the question of damages, the defendant, even though in default, is entitled to full participation); *see also Bonilla v. Trebol Motors Corp.,* 150 F.3d 77, 82 (1st Cir.1998) (not-

**9.** *See also,* following *Rainwater, Sims v. Fitzpatrick,* 288 S.W.3d 93, 103 (Tex.App.-Houston [1st Dist.] 2009, no pet.); *Marr v. Marr,* 905 S.W.2d 331, 333 (Tex.App.-Waco 1995, no writ); *Mackey v. Bradley Motors, Inc.,* 871 S.W.2d 243, 247 (Tex.App.-Amarillo), *rev'd on other grounds,* 878 S.W.2d 140 (Tex.1994); *Kirkpatrick v. Mem'l Hosp. of Garland,* 862 S.W.2d 762, 773 (Tex.App.-Dallas 1993, writ denied); *Brantley v. Etter,* 662 S.W.2d 752, 756 (Tex.App.-San Antonio 1983), *writ ref'd n.r.e.,* 677 S.W.2d 503 (Tex.1984) (per curiam); *Helfman Motors, Inc. v. Stockman,* 616 S.W.2d 394, 397 (Tex.Civ.App.-Fort Worth 1981, writ ref'd n.r.e.); *Bass v. Duffey,* 620 S.W.2d 847, 849–50 (Tex.Civ.App.-Houston [14th Dist.] 1981, no writ); *Ill. Emp'rs Ins. Co. of Wausau v. Lewis,* 582 S.W.2d 242 (Tex.

Civ.App.-Beaumont), *writ ref'd n.r.e.,* 590 S.W.2d 119 (Tex.1979) (per curiam).

**10.** Since the court of appeals decision in this case, another court of appeals has upheld death-penalty sanctions that precluded the defaulted defendant from contesting both the plaintiff's liability and damages claims. *See In re Estate of Preston,* 346 S.W.3d 137 (Tex. App.-Fort Worth 2011, no pet.). The court's opinion, however, does not discuss the damages-phase preclusion aspect of the sanctions order nor does the opinion address or overrule its own prior authority holding that a defaulted defendant has the right to challenge the plaintiff's damages. *See Helfman Motors, infra* note 9 (citing *Rainwater*).

ing general rule that a defaulting party "is entitled to contest damages and to participate in a hearing on damages, should one be held") (citing 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2688 (3d. ed.1998)); B. Finberg, Annotation: *Defaulting Defendant's Right to Notice and Hearing as to Determination of Amount of Damages,* 15 A.L.R.3d 586 (1967) (collecting cases).

Retamco points out, however, that much of this authority concerns no-answer default judgments rather than defaults caused by discovery abuse. It emphasizes again that discovery abuse can include conduct that goes far beyond a mere failure to answer and submits that a trial court must have discretion in an appropriate case to prohibit the sanctioned party's further participation.

■ We agree that a trial court should have discretion to bar a defendant's participation, such as at the damages hearing in this case, if such a sanction is necessary to remedy the abuse. Even so, such an extreme sanction must be carefully tailored to comport with the requirements of *TransAmerican* and due process. Sanctions that preclude the admission of evidence intrude upon the fact-finding process of a trial just as much as a default judgment on liability. In the latter instance, sanctions that adjudicate the merits of a party's claim or defense cannot be imposed as mere punishment but rather are appropriate only when the sanctioned party's conduct justifies a presumption that an asserted claim or defense lacks merit. *TransAmerican,* 811 S.W.2d at 918. The justification for also barring the defaulted party from the ensuing evidentiary trial on damages must go beyond that presumption because the damages issue is materially different.

The existence, or not, of facts establishing liability lends itself to the first presumption. For instance: Did the defendant's negligence proximately cause the occurrence? *Morgan,* 675 S.W.2d at 732–33. Was the defendant indebted to the plaintiff? *Paramount Pipe & Supply Co. v. Muhr,* 749 S.W.2d 491, 496 (Tex.1988). Striking the defendant's answer establishes the answer to these questions. The either/or character of liability facts, however, does not translate to a claim for unliquidated damages, which cannot be determined by answering "yes" or "no." By their very nature, unliquidated damages are not susceptible to exact calculation and involve a range of possible answers. For this reason, a defaulting defendant admits facts establishing liability but not any claimed amount of unliquidated damages. *See Holt Atherton,* 835 S.W.2d at 83; *see also Thomson v. Wooster,* 114 U.S. 104, 111, 5 S.Ct. 788, 29 L.Ed. 105 (1885) (allegations that are distinct and positive are confessed by default; matters not alleged with certainty or, which by their nature require examination of details, require the complainant to present proof). So what kind of abuse would justify barring a defaulted defendant's participation at the hearing on unliquidated damages? *Dynamic Health,* the case cited by the court of appeals in this case, suggests spoliation as one example. *Dynamic Health,* 32 S.W.3d at 884.

The destruction of evidence that directly and significantly impairs a party's ability to prove damages might reasonably justify a sanction like the one in this case. But the destruction of this type of evidence is not at issue in this case. The evidence needed to prove Retamco's damages is available. According to Retamco, the information on the various wells has been collected, but at great expense. Retamco asserts that Paradigm's discovery abuse forced it to spend hundreds of thousands

of dollars to assemble the data needed to determine its damages—information that Retamco asserts Paradigm possessed and owed it under the 1984 Agreement.

■■■ Although punishment may be a legitimate consequence of a discovery sanction, it cannot be excessive. *See Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 849 (Tex.1992) (listing securing compliance, deterrence, and punishment as legitimate purposes of discovery sanctions). Sanctions for discovery abuse should not be dispensed as arbitrary monetary penalties unrelated to any harm. *Ford Motor Co. v. Tyson,* 943 S.W.2d 527, 534–35 (Tex. App.-Dallas 1997, orig. proceeding). When discussing excessiveness, we have said that "the punishment should fit the crime" and that the sanction "should be no more severe than necessary to satisfy its legitimate purposes." *TransAmerican,* 811 S.W.2d at 917; *see also PR Invs. and Specialty Retailers, Inc. v. State,* 251 S.W.3d 472, 480 (Tex.2008); *In re SCI Tex. Funeral Servs., Inc.,* 236 S.W.3d 759, 761 (Tex.2007) (per curiam). Moreover, discovery sanctions are primarily intended to remedy discovery abuse and should be tailored to serve their remedial purpose. It is not apparent that barring Paradigm's participation in the post-default damages phase of the case served any purpose other than punishment.

■■■ Compensatory damages awarded post-default should compensate the injured party for its loss, not penalize the wrongdoer or allow the plaintiff a windfall. *See Torrington Co. v. Stutzman,* 46 S.W.3d 829, 848–49 (Tex.2000) (noting that the role of compensatory damages is to fairly compensate the plaintiff, not punish the defendant). And although punitive damages are intended to punish the wrongdoer, they nevertheless must bear some relationship to the liability-producing conduct. *See* Tex. Civ. Prac. & Rem.Code

§ 41.011(a) (requiring factfinder to consider nature of the wrong, character of conduct involved, degree of culpability, and extent to which conduct offends public sense of justice in determining exemplary damages); *see also In the Matter of Gober,* 100 F.3d at 1205 (noting that conduct sufficient to warrant punitive damages is not regarded as admitted by default). Given this authority and the death-penalty sanction that ended the liability litigation, the additional sanction of precluding Paradigm from the damages trial was excessive. Retamco might have been entitled to a lesser sanction, such as the additional costs and expenses caused by Paradigm's discovery abuse, but barring its participation in the damages trial was "more severe than necessary to satisfy its legitimate purposes." *TransAmerican,* 811 S.W.2d at 917.

\* \* \*

The judgment of the court of appeals is reversed and the case is remanded to the trial court for further proceedings consistent with our opinion.

Justice GREEN did not participate in the decision.