

# NUMBER 13-18-00233-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

SUPER STARR INTERNATIONAL, LLC,
LANCE PETERSON, RED STARR,
SPR DE R.L. DE C.V., AND
KEMAL MERT GUMUS,                                      Appellants,

v.

FRESH TEXAS PRODUCE, LLC,
INDIVIDUALLY AND DERIVATIVELY
ON BEHALF OF TEX STARR
DISTRIBUTING, LLC,                                      Appellees.

On appeal from the 92nd District Court
of Hidalgo County, Texas.

# MEMORANDUM OPINION ON REHEARING

Before Chief Justice Contreras and Justices Benavides and Hinojosa
Memorandum Opinion by Justice Hinojosa

On April 18, 2019, this Court issued a memorandum opinion affirming the trial

court's judgment.   Appellants Super Starr International, LLC, Lance Peterson, and Red Starr, SPR de R.L. de C.V. then filed a motion for rehearing.[1]   After due consideration, we grant appellants' motion for rehearing, withdraw our prior memorandum opinion and judgment and substitute the following in its place.

Appellants appeal from an order modifying a previously rendered temporary injunction.   In nine issues, which we construe as three, appellants complain that the trial court abused its discretion by signing the modified temporary injunction on the grounds that:   (1) there is legally insufficient evidence supporting various aspects of the modified temporary injunction, thereby negating any right to continued injunctive relief; (2) the trial court abused its discretion by admitting an exhibit tendered by appellee Fresh Tex Produce, LLC, individually and derivatively on behalf of Tex Starr Distributing, LLC; and (3) the modified temporary injunction is overly broad and fails to comport with Texas Rule of Civil Procedure 683.   We reverse and remand in part and affirm in part.

## I. BACKGROUND

This is the third interlocutory appeal involving the same underlying business dispute.[2]   *See Super Starr Int'l Produce, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.) (*Super Starr I*); *Super Starr Int'l Produce, LLC v. Fresh Tex Produce, LLC*, No. 13-17-00184-CV, 2017 WL 4054395 (Tex. App.—Corpus Christi–Edinburg Sep. 14, 2017, no pet.) (mem. op.) (*Super Starr II*).   We

---

[1] Appellant Kemal Mert Gumus did not file a motion for rehearing.

[2] Appellant Kemal Mert Gumus did not participate in the appeal in *Super Starr I*.   *See Super Starr Int'l Produce, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 833 n.2 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.).   Since then, Gumus has answered the suit filed by the Distributor and filed a notice of appeal from the modified temporary injunction.

will refer to the parties as we did in our previous opinions:   Fresh Tex Produce, LLC (the Distributor); Tex Starr Distributing, LLC (the LLC); Super Starr International, LLC (the Importer); Lance Peterson, the current president of the Importer; Red Starr, SPR de R.L. de C.V. (the Grower); and Gumus, an employee of the Importer.

Generally, the Distributor and the Importer created the LLC for the purpose of importing, marketing, and distributing a hybrid papaya to customers in the United States. *Super Starr I*, 531 S.W.3d at 834.   The LLC's operating agreements included an exclusivity provision that expired at the end of 2015.   *Id*. at 835.   After the exclusivity period expired, the Importer ceased supplying the LLC with hybrid papayas and began importing, marketing, and distributing the hybrid papayas on its own.   *Id*. at 835–36. The Distributor sued the Importer, the Grower, Peterson, and Gumus, asserting several claims and seeking injunctive relief.   *Id*. at 836.   The trial court signed a temporary injunction order that included three broad classes of provisions:   (1) exclusivity provisions, (2) non-competition provisions, and (3) a preservation of electronic information provision.   *Id*. at 837.

The appellants in *Super Starr I* successfully challenged the legal sufficiency of the evidence supporting the Distributor's claims that served as a basis for the injunction's exclusivity provisions.   *Id*. at 841–42.   They did not dispute that some evidence existed that would theoretically sustain the Distributor's claim under the Texas Uniform Trade Secrets Act (TUTSA), which formed part of the basis for the non-competition restrictions. *Id*. at 843–44 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 134A.003(a)).   We reversed and rendered a denial of the exclusivity and preservation of electronic information

3

provisions. *Super Starr I*, 531 S.W.3d at 852. We reversed the non-competition provisions and remanded those provisions with instructions to redefine "soliciting" so as to not prohibit mass advertising and to redraft the non-competition restrictions by defining "growers," "customers," accounts," "trade secrets," and "confidential information." *Id*. At the time of remand, the non-competition provisions restricted appellants from:

> [2.] Soliciting or conducting business with [the Distributor's] customers or growers;
>
> [3.] Soliciting, directly or indirectly, accounts of [the LLC] or [the Distributor]; [and]
>
> . . . .
>
> [7.] Using trade secrets and confidential information owned by [the LLC] or [the Distributor];

*Id*.

After remand and the issuance of our mandate in *Super Starr I*, the Grower, the Importer, and Lance Peterson filed a motion to enforce mandates with the trial court.[3] This motion argued, in relevant part:

> The three remanded restrictions should be denied for lack of evidence. No evidence exists in the record to support further definition of the remanded restrictions. As the court of appeals explained, these restrictions were void as written and thus had to be reversed. *See*, *e.g.*, [*Super Starr I*, 531 S.W.3d at 850] ("[The Super Starr Defendants] contend that [Restriction 7] is void for vagueness because 'trade secrets' is undefined. We agree."). [The Distributor] has not offered further evidence to support these restrictions or requested that this Court comply with the instructions of the court of appeals. As a result, the Court should deny the remanded restrictions.

---

[3] This motion sought enforcement of our mandates in *Super Starr I* and *Super Starr II*. Only our mandate in *Super Starr I* is at issue in the instant appeal.

The trial court held a hearing on the motion to enforce mandates at which Kenneth Alford—the Distributor's president, Gumus, and Peterson testified.   It admitted sixteen exhibits, which generally consisted of the Distributor's produce invoices and quote sheet and the Importer's quote sheet, which the Distributor argued mimicked its own. Following the hearing, the trial court signed a modified temporary injunction, which provides in relevant part:

> The Court hereby ORDERS that Defendants—along with their respective agents, servants, employees, and those acting in concert therewith—are hereby immediately enjoined from:
>
> [2.[4]]   Soliciting or conducting business with [the Distributor's] customers or growers;
>
> [3.]   Soliciting, directly or indirectly, accounts of [the Distributor] or [the LLC]; and
>
> [7.]   Using trade secrets and confidential information owned by [the Distributor] or [the LLC];
>
> "Soliciting" shall not be construed, for purposed [sic] of this temporary injunction, as prohibiting mass advertising.   "Confidential information" means "membership agreements, membership lists, intellectual property, finances, methods of operation and competition, pricing, marketing plan and strategies, equipment and operational requirements, and information concerning personnel, clients, customers, independent contractors, suppliers and growers of [the LLC]."   "Trade Secrets" includes "Confidential information" and also includes "lists of suppliers, growers and customers, method of operation of grading and classifying papayas and method of ripening and storing papayas."   "Customers" are defined as those entities listed on Exhibit "A" which is attached hereto and incorporated herein except that those entities which are listed on both Exhibit "B" which is attached hereto and incorporated herein and on Exhibit "A" may be contacted but only for the purpose of selling papaya.   "Accounts" has the same definition as "Customers." "Growers" are the entities and individuals identified on Exhibit "C" attached hereto and incorporated herein.

---

[4] For consistency, we will continue to refer to the restrictions as they were numbered in *Super Starr I*.

5

The Grower, the Importer, Peterson, and Gumus have appealed from the modified temporary injunction. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4); *W. I-10 Volunteer Fire Dep't v. Harris Cty. Emergency Servs. Dist. No. 48*, 507 S.W.3d 356, 358–59 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (concluding that an appellate court has jurisdiction to review an interlocutory order modifying a temporary injunction because it effectively dissolves a temporary injunction and grants a new one); *Cessna Aircraft Co. v. Aircraft Network, LLC*, 345 S.W.3d 139, 144 (Tex. App.—Dallas 2011, no pet.) (explaining that parties retain the right to appeal a trial court's determination of issues on remand from the appellate court).

## II. DISCUSSION

### A. Waiver / Law of the Case

In what we construe as appellants' first issue, they contend that there is legally insufficient evidence supporting various aspects of the modified temporary injunction, thereby negating any right to continued injunctive relief. In four sub-issues, appellants complain that the Distributor failed to present legally sufficient evidence regarding: (a) its TUTSA claim; (b) a probable, imminent, and irreparable injury regarding sales of the hybrid papayas; (c) a nexus between the information appellants allegedly acquired and the acts enjoined; (d) a probable right of recovery on any claim against the Grower; and (e) the definitions of "customers," "accounts," and "grower" included in the modified temporary injunction. The Distributor responds that appellants are barred from lodging their legal sufficiency challenge under the doctrines of law of the case "and/or" waiver.

Where error exists at the time of an initial appeal, but it is not raised by the

6

appellant, the appellant waives the right to complain of the error in a subsequent appeal. *See Deaton v. United Mobile Networks, L.P.*, 966 S.W.2d 113, 115 (Tex. App.— Texarkana 1998, pet. denied); *Koch Gathering Sys., Inc. v. Harms*, 946 S.W.2d 453, 457– 58 (Tex. App.—Corpus Christi–Edinburg 1997, writ denied); *Harris County v. Walsweer*, 930 S.W.2d 659, 665–66 (Tex. App.—Houston [1st Dist.] 1996, writ denied); *Tex. Dep't of Transp. v. Cotner*, 877 S.W.2d 64, 66 (Tex. App.—Waco 1994, writ denied); *see also Women's Clinic of S. Tex. v. Alonzo*, No. 13-12-00537-CV, 2013 WL 2948413, at *2 (Tex. App.—Corpus Christi–Edinburg June 13, 2013, pet. denied) (mem. op.); *Cessna*, 345 S.W.3d at 144 ("When an appellate court remands a case with specific instructions, the trial court is limited to complying with the instructions and cannot re-litigate issues controverted at the former trial.").

In *Super Starr I*, the Grower and Importer lodged numerous legal sufficiency challenges. But, they did not challenge the legal sufficiency underlying the Distributor's request for temporary injunctive relief premised on a TUTSA claim. *Super Starr I*, 531 S.W.3d at 843 ("Appellants do not challenge that some evidence was presented that would theoretically sustain a claim under the Texas Uniform Trade Secrets Act (TUTSA)[.]"). Therefore, we conclude that appellants have waived their legal sufficiency challenges by not raising them in *Super Starr I*.

Further, to the extent appellants reassert legal sufficiency challenges already addressed in *Super Starr I*, we will not revisit our previous determinations which now constitute law of the case. *See Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 182 (Tex. 2012) ("By narrowing the issues in successive appeals, the law-

7

of-the-case doctrine further seeks to promote efficiency and uniformity in the decision-making process."); *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003).

As reframed, sub-issues 1a, 1b, and 1c are overruled.

In sub-issue 1d, appellants rely on our holding in *Super Starr I* that there was no evidence in the record that could reasonably support the trial court's decision to grant injunctive relief premised on aiding and abetting in the breach of fiduciary duty, which was the only claim asserted against the Grower.   531 S.W.3d at 847–48, n.7.   In light of this holding, appellants argue that the trial court abused its discretion in enjoining the Grower. The Distributor "concedes that the modified injunction should not enjoin the Grower." Recognizing that our previous determination is the law of the case, we conclude that the Distributor presented no evidence demonstrating a probable right of recovery on any claim against the Grower.   *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (identifying the elements required for an applicant to obtain a temporary injunction). Therefore, the trial court abused its discretion by including the Grower in the modified temporary injunction.

As re-framed, sub-issue 1d is sustained.[5]

## B.    "Customers," "Accounts," and "Growers"

Sub-issue 1e and issue 2 both relate to the trial court's actions in following our previous remand instructions to define "customers," "accounts," and "growers."   *Super Starr I*, 531 S.W.3d at 852.

In what we construe as appellants' second issue, they contend that the trial court

---

[5] Sub-issue 1e, which challenges the legal sufficiency of the evidence supporting the trial court's definitions of "customers," "accounts," and "growers," implicates appellants' second issue.

abused its discretion by overruling their hearsay objection and admitting Exhibit 8 tendered by the Distributor. Exhibit 8 contains documents related to the identification of "growers," "customers," and "accounts." The exhibit's cover page provides:

Trade secrets

- List of our suppliers and customers
- Method of operation of grading and classifying the papaya
- Method of ripening and storing the papaya

Confidential information

- We believe all the items above are covered under the operating agreement item 3.4 Confidentiality. (a) Each member shall keep confidential all, and shall not divulge to any other party any of the private, secret or confidential information of the Company including private, secret, and confidential information relating to such matters as membership agreements, membership lists, intellectual property, finances, methods of operation and competition, pricing, marketing plans and strategies, equipment, and operational requirements and information concerning personnel, clients, independent contractors, and suppliers of the Company, unless the Member is required to disclose such information by law.

Relatedly, in appellants' sub-issue 1e, they contend that there is legally insufficient evidence to support the trial court's definitions of "customers", "accounts", and "growers" included in the modified temporary injunction.

The Distributor responds that the trial court did not abuse its discretion in overruling appellants' hearsay objection because Alford "established that he created those lists and attested to the lists' accuracy." The Distributor also contends that Exhibit 8 is admissible as a summary to prove voluminous content. *See* TEX. R. EVID. 1006 ("The proponent may use a summary, chart, or calculation to prove the content of voluminous writings,

recordings, or photographs that cannot be conveniently examined in court."). Lastly, the Distributor contends that appellants' second issue is inadequately briefed because they fail to explain why the admitted exhibit was harmful.

### 1. Standard of Review

The admission or exclusion of evidence is within the trial court's discretion. *Owens–Corning Fiberglas Corp. v. Wasiak*, 972 S.W.2d 35, 43 (Tex. 1998). To obtain reversal on appeal, an appellant must show that the trial court's ruling was in error and that the error was calculated to cause and probably did cause the rendition of an improper judgment. *Id.*; *see* TEX. R. APP. P. 44.1(a).

### 2. Analysis

Assuming without deciding that appellants properly briefed their second issue, we conclude that the trial court did not abuse its discretion. At the hearing on appellants' motion to enforce mandates, Alford was asked by the Distributor's counsel and answered:

> Q You were asking a list of growers to be confidential or proprietary, and they can't be contacted or I'd say, [the Importer] cannot purchase from them, let me ask you, are the growers that you have listed on that Exhibit 8, are those all growers that came from [the Distributor]?
>
> A No, but they are growers that they had no knowledge of 'til they obtained this information from [the Distributor], so they know exactly what they bring in, what quality, so I think it's a huge advantage on their part that we already netted the growers in Mexico.

From the context, the trial court may have concluded that Alford possessed personal knowledge of the lists in Exhibit 8 and therefore, the exhibit was not hearsay. *See* TEX. R. EVID. 801(d); *Hugh Wood Ford, Inc. v. Galloway*, 830 S.W.2d 296, 298 (Tex. App.— Houston [14th Dist.] 1992, writ denied) (overruling a complaint that the trial court abused

10

its discretion in admitting a list where two witnesses testified as to the list's content).

In sub-issue 1e, appellants challenge the legal sufficiency of the evidence supporting the trial court's definitions of "customers," "accounts," and "growers." Appellants contend that "Alford's testimony and [Exhibit 8] are nothing more than conclusory statements, which do not constitute evidence at all." Cognizant that legal sufficiency is a relevant factor in assessing whether the trial court abused its discretion, *Super Starr I*, 531 S.W.3d at 838, we cannot say that the trial court abused its discretion in crafting the definitions as it did.

Lastly, the trial court carried out our mandate in *Super Starr I* by defining the terms we instructed it to define. *See* TEX. R. APP. P. 51.1(b); *In re Castle Tex. Prod. L.P.*, 563 S.W.3d 216, 219 (Tex. 2018) (per curiam); *Tex. Parks & Wildlife Dep't v. Dearing*, 240 S.W.3d 330, 347 (Tex. App.—Austin 2007, pet. denied) ("Upon receiving the appellate court's mandate, the lower court has a mandatory, ministerial duty to enforce the appellate court's judgment.").

As reframed, appellants' sub-issue 1e and issue 2 are overruled.

## C. Overbreadth

In appellants' third issue, they complain that the modified temporary injunction is overly broad. Appellants argue, as they did in their second issue, that there is no evidence underlying the definitions of "customers," "accounts," and "growers" in addition to the terms "trade secrets" and "confidential information." The modified temporary injunction defined confidential information as "membership agreements, membership lists, intellectual property, finances, methods of operation and competition, pricing,

11

marketing plan and strategies, equipment and operational requirements, and information concerning personnel, clients, customers, independent contractors, suppliers and growers of [the LLC]." Appellants contend that this definition represents a "string of categories which are equally opaque." Appellants also contend that our disposition in *Super Starr I* necessarily allows them to sell any produce so long as they do not misappropriate the LLC's confidential information and that the modified temporary injunction unnecessarily impedes their ability to do so.

## 1.    Applicable Law

We wrote in *Super Starr I*:

a. Overbreadth

> We review the scope of an injunction for an abuse of the trial court's discretion. A trial court abuses its discretion by entering an overly-broad injunction which grants more relief than a plaintiff is entitled to by enjoining a defendant from conducting lawful activities or from exercising legal rights. Where a party's acts are divisible, and some acts are permissible and some are not, an injunction should not issue to restrain actions that are legal or about which there is no asserted complaint. But an injunction must be broad enough to prevent a repetition of the wrong sought to be corrected.

b. Specificity

> Rule 683 provides, among other things, that "every order granting an injunction" shall be specific in terms and shall describe in reasonable detail and not by reference to the complaint or other document, the acts sought to be restrained. An injunction decree must be as definite, clear, and precise as possible, and when practicable it should inform the defendant of the acts he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ. The rule's purpose is to ensure that parties are adequately informed of the acts they are enjoined from doing and the reasons for the injunction. The requirements of the civil procedure rule on the form and scope of an injunction are mandatory and must be strictly followed.

*Super Starr I*, 531 S.W.3d at 549 (citations and quotation marks omitted).

12

**2.    Analysis**

In *Super Starr I*, the Distributor's brief quoted a passage from *Miller v. Talley Dunn Gallery, LLC*, which provides:

> Miller finally argues paragraph 1 of the temporary injunction is overbroad and exceeds the scope of the pleadings and the evidence because it encompasses not only the General Ledger but other undefined "confidential information" and "trade secrets." The temporary injunction does not specifically define every item comprising a trade secret or confidential information of the Gallery. However, this level of detail is not required. *See Lockhart v. McCurley*, No. 10-09-00240-CV, 2010 WL 966029, at *4 (Tex. App.—Waco Mar. 10, 2010, no pet.) (mem. op.). To satisfy the requirement in rule 683 that an injunction order be "specific in terms," the order "must be as definite, clear and precise as possible and when practicable it should inform the defendant of the acts he is restrained from doing . . . ." *San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 291 S.W.2d 697, 702 (Tex. 1956); *see also* Tex. R. Civ. P. 683. This is balanced with the practicality that an injunction "must be in broad enough terms to prevent repetition of the evil sought to be stopped." *San Antonio Bar Ass'n*, 291 S.W.2d at 702.
>
> Here, the temporary injunction states that "confidential information" of the Gallery includes client lists, clients' purchase history and pricing information, and the Gallery's general ledgers. The specific examples of the items comprising "trade secrets" and "confidential information," when read in the context of the suit, provided Miller with adequate notice of the information that he is prohibited from using or disclosing. *See Lockhart*, 2010 WL 966029, at *4; *IAC, Ltd.*, 160 S.W.3d at 201–02 (concluding order which prohibited defendant from using "Bell trade secrets and confidential information" was sufficiently specific because injunction as a whole made it clear that this phrase meant "information pertaining to Bell's 206B and OH–58 helicopter blades"). The order leaves nothing to conjecture. *See Lockhart*, 2010 WL 966029, at *4 (concluding injunction adequately informed defendant of prohibited conducted even though terminology used in order was not defined). We conclude paragraph 1 of the temporary injunction is not overbroad by failing to inadequately describe the confidential information that Miller is prevented from disclosing.

No. 05-15-00444-CV, 2016 WL 836775, at *14 (Tex. App.—Dallas Mar. 3, 2016, no pet.)

(mem. op.).

We find this passage from *Miller* instructive. The trial court's definitions of "trade secrets" and "confidential information," when read in the context of the suit, provides appellants with adequate notice of the information that they are prohibited from using. *See id*. Moreover, the definition of "confidential information" mirrors the definition contained in the operating agreement, which was signed by a representative of the Importer.

As reframed, appellants' third issue is overruled.

### III. CONCLUSION

We reverse the trial court's modified temporary injunction to the extent that it enjoins Red Starr, SPR de R.L. de C.V. In all other respects, we affirm the trial court's modified temporary injunction. We remand the case to the trial court for entry of a temporary injunction in accordance with this memorandum opinion.

LETICIA HINOJOSA
Justice

Delivered and filed the
6th day of June, 2019.