Opinion issued July 23, 2024



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00394-CV

_____

**DAVUD MUHSIN OZCAN, Appellant**

**V.**

**BETUL OZCAN, Appellee**

---

**On Appeal from the 387th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 21-DCV-289678**

---

## MEMORANDUM OPINION

Appellant, Davud Muhsin Ozcan ("Davud"), challenges the trial court's no-answer default final decree of divorce in favor of appellee, Betul Ozcan ("Betul"), in Betul's suit against him for divorce. In his sole issue, Davud contends that the trial court erred in entering a no-answer default final decree of divorce.

We reverse and remand.

## Background

In her original petition for divorce, filed on December 15, 2021, Betul alleged that she and Davud were married on or about May 7, 1994 and separated in July 2021. According to Betul, the marriage became insupportable "because of discord or a conflict of personalities . . . that destroy[ed] the legitimate ends of the marriage relationship." Davud was personally served with citation on February 10, 2022.

On March 21, 2022, Betul's then-attorney, Sana Abid, sent a notice to Davud by certified mail, return receipt requested, informing him that the divorce proceeding "[wa]s set for a final trial on Tuesday, May 31, 2022 at 9:00 A.M." The notice also provided information for Davud to connect to the courtroom via a Zoom link.[1] Davud, proceeding pro se, contacted the trial court on May 31, 2022 as instructed but was informed that trial would not go forward that day.

On August 1, 2022, Betul filed an "Agreed Motion to Substitute Attorney," requesting that Matthew Ugbana be designated as her attorney in charge in place of Abid. Apart from a "Certificate of Last Known Mailing Address" for Davud, subsequent filings by Betul in the proceeding did not contain a certificate of service

---

[1] *See Pruitt v. State*, 646 S.W.3d 879, 882 n.1 (Tex. App.—Amarillo 2022, no pet.) (noting "Zoom" constitutes "a videoconferencing platform used for conducting remote proceedings" (internal quotations omitted)).

compliant with Texas Rule of Civil Procedure 21a showing that Davud was served with such filings.[2]

On October 4, 2022, Betul filed an amended petition for divorce, in which she alleged that the marriage between her and Davud "had become insupportable because of discord or a conflict of personalities . . . that destroy[ed[ the legitimate ends of the marriage relationship." She further alleged that she and Davud were parents of a minor child, and she requested that the trial court appoint her as sole managing conservator of the child. Betul also requested that the trial court order Davud to pay child support, including medical and dental support, and that it order Davud to pay her spousal maintenance. As to the marital estate, Betul requested that the trial court "order a division of the estate . . . in a manner that th[e] [c]ourt deem[ed] just and right."

On the same date, Betul filed an inventory and appraisement, in which she identified two bank accounts as community assets, one of which had an unknown balance, and a car that was in her possession. She attached to the inventory and appraisement a copy of the 2021 federal income tax return that was jointly filed by Davud and Betul.

The record does not contain a docket control order, notice of trial setting, or correspondence from Betul's attorney informing Davud of a new trial date for the

---

[2] *See* TEX. R. CIV. P. 21a.

3

divorce proceeding. Yet the trial court signed a "Default Final Decree of Divorce and Order for Conservatorship and Child Support" on March 2, 2023.[3] The no-answer default final divorce decree states that the "case was heard" on March 2, 2023, and that Davud, "after being served with process in this suit, never responded to the Petition for Divorce and has defaulted."

Also, in the no-answer default final divorce decree, the trial court granted Betul a divorce from Davud and dissolved their marriage "on the ground of insupportability." As to the child of Betul and Davud, the trial court appointed Betul as managing conservator of the child and Davud as possessory conservator of the child. The trial court also gave Betul "the exclusive right to designate the primary residence of the child without regard to geographic area." And the trial court ordered that Davud pay child support to Betul in the amount of $1,500.00 per month. Betul was made responsible for procuring health and dental insurance coverage for the child through her employer.

As to a just and right division of marital estate, the trial court awarded Betul "[a]ll clothing, jewelry, and other personal effects" in her possession, "[a]ll sums of cash" in her possession or subject to her sole control, and the car listed on her

---

[3] Prior to filing her amended petition for divorce, Betul, on August 8, 2022, filed a motion for default decree, requesting that the trial court "sign a default judgment" in her favor.

inventory and appraisement. Davud was likewise awarded his personal effects and any funds in his possession.

As to Betul's request for spousal maintenance, the trial court found that Betul was eligible to receive spousal maintenance, and it ordered that Davud pay Betul $3,000.00 per month in spousal maintenance until "October 31, 2032"; "the death of either [Betul] or [Davud]"; "the remarriage of [Betul]"; or "a further order of the [trial court] affecting the spousal maintenance obligation."

On April 3, 2023, Davud filed a motion for new trial. In his motion, he asserted that he had "appear[ed] in person (via [Z]oom) at the [original] May 31, 2022, trial setting" but learned that the trial had been "postponed because of an apparent conflict" between Betul and her then-attorney, Abid. Several months later, on October 10, 2022, Davud was served with Betul's amended petition for divorce. Unbeknownst to Davud, however, Betul had "scheduled a new [t]rial setting for March 2, 2023, when [Davud] was overseas on business." In his declaration accompanying his motion for new trial, Davud stated that he "never knew that there was going to be a new [t]rial on March 2, 2023," but Betul knew that he was going to be overseas on that date. And Betul's attorney "mistakenly represented to [the trial court] that [Davud] had never entered an appearance" in the case.

Davud's motion for new trial was overruled by operation of law.

## Standard of Review

A trial court's decision to overrule a motion to set aside a default judgment and grant a new trial is reviewed for an abuse of discretion. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009); *Interconex, Inc. v. Ugarov*, 224 S.W.3d 523, 536 (Tex. App.—Houston [1st Dist.] 2007, no pet.). A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner or when it acts without reference to any guiding rules or principles. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991).

## No-Answer Default Judgment

In his sole issue, Davud argues that the trial court erred in entering a no-answer default final decree of divorce and not ordering a new trial because he was not given notice of the trial date.

A default judgment should be set aside in any case in which the defendant demonstrates that (1) his failure to answer or appear was not intentional or the result of conscious indifference; (2) he has a meritorious defense; and (3) the granting of a new trial will not operate to cause delay or other injury to the plaintiff. *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. [Comm'n Op.] 1939). To show that his failure to answer or appear was not intentional or the result of conscious indifference, a defendant must have "[s]ome excuse, but not necessarily a good excuse." *Id.* at 125.

6

Texas courts generally recognize two types of default judgments: no-answer default judgments and post-answer default judgments. *Hart Custom Homes, LLC v. Palomar Inv. Grp., LLC*, No. 01-22-00343-CV, 2023 WL 7391878, at \*2 (Tex. App.—Houston [1st Dist.] Nov. 9, 2023, no pet.) (mem. op.); *see also Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 183–84 (Tex. 2012); *Dolgencorp*, 288 S.W.3d at 930. A no-answer default judgment is "caused by a defendant's failure to answer after service." *Paradigm Oil*, 372 S.W.3d at 183; *see also* TEX. R. CIV. P. 239. In most such cases, "the non-answering party in a no-answer default judgment is said to have admitted both the truth of facts set out in the petition and the defendant's liability on any cause of action properly alleged by those facts." *Paradigm Oil*, 372 S.W.3d at 183. As a result, "[w]hen a no-answer default judgment is rendered, the defendant's liability for all causes of action pled is conclusively established and all allegations of fact in the petition, except the amount of unliquidated damages, are deemed admitted." *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 242 S.W.3d 67, 72 (Tex. App.—San Antonio 2007, pet. denied). For this reason, "[i]n a no-answer default [judgment] context," judgment can usually "be entered on the pleadings alone, and all facts properly pled are deemed admitted." *Whitaker v. Rose*, 218 S.W.3d 216, 220 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

In the context of no-answer default final decrees of divorce, a defendant's failure to appear or answer has a more limited effect. *See Cohen v. Bar*, 569 S.W.3d 764, 771 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *Osteen v. Osteen*, 38 S.W.3d 809, 814 (Tex. App.—Houston [14th Dist.] 2001, no pet.). A failure to appear or answer in a divorce proceeding "is taken only as an admission of the allegations in the petition regarding residence and domicile," but it does not operate to admit the material allegations in the plaintiff's petition. *Cohen*, 569 S.W.3d at 771; *see also Wilson v. Wilson*, 132 S.W.3d 533, 536–38 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

Here, to determine if Davud is entitled to have the no-answer default final decree of divorce set aside, we first consider whether Davud satisfied his burden to show that his failure to answer or appear was not intentional or the result of conscious indifference. *See Craddock*, 133 S.W.2d at 126. "Consciously indifferent conduct occurs when the defendant knew [he] was sued but did not care." *Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012) (internal quotations omitted). Some excuse, not necessarily even a good one, is enough to show that a defendant's failure to answer was not because the defendant did not care. *In re Marriage of Sandoval*, 619 S.W.3d 716, 721 (Tex. 2021). "The failure to respond must arise from more than mere negligence, and the element of conscious indifference can be overcome by a reasonable explanation." *Id.*

8

Davud's declaration, which he attached to his motion for new trial, shows that he misunderstood that his contact with the trial court on May 31, 2022—the date of the original, passed trial setting—would suffice to serve as an "appearance" such that he would be informed of any new trial setting. Further, Davud's request in his motion for new trial for "sufficient time to seek (through negotiation or mediation) an amicable resolution" of the terms of his and Betul's divorce indicates that he did not necessarily contest the allegations in the Betul's amended petition for divorce but expected to be able to have input into the final divorce decree's specific terms. Davud's apparent misunderstanding of the procedural requirements for making an appearance, although careless, does not show that his failure to file an answer or appearance was intentional or the result of conscious indifference.

We next consider whether Davud has a meritorious defense. *Craddock*, 133 S.W.2d at 126. Here, the record on its face shows that Davud has a meritorious defense. Despite Davud's failure to answer or appear, Betul still bore the burden of proving the material allegations in her amended petition for divorce as to the division of the marital estate, the identification of separate property, if any, the best interest of Betul and Davud's child with respect to managing and possessory conservatorship, the basis for the monthly child support calculation, and Betul's need for spousal maintenance of $3,000.00 per month for ten years. *See Cohen*, 569 S.W.3d at 773; *Wilson*, 132 S.W.3d at 536–38; *see also Osteen*, 38 S.W.3d at 814.

9

Yet the community property inventory provided by Betul was conclusory and incomplete. It stated that the marital estate had only three assets, those being two bank accounts and one car, and she did not identify the amount on deposit for one of the bank accounts. Further, the 2021 joint federal income tax return attached to Betul's inventory and appraisement showed that David and Betul received $145,945.00 in income for two S corporations, and it indicated that they owned stock in those corporations. Such assets are not accounted for in the no-answer default final decree of divorce. And the record is devoid of any evidence supporting the child custody and child support determinations and the spousal maintenance award. *See Cohen*, 569 S.W.3d at 774–75 (reversing and remanding where inventory provided was conclusory and did not fully identify the assets and property that allegedly formed community estate).

Finally, we consider whether the granting of a new trial will operate to cause delay or other injury to Betul. *Craddock*, 133 S.W.2d at 126. Under Texas law, the terms of a divorce decree addressing spousal maintenance, child support, and child custody arrangements continue to be subject to modification. *See* TEX. FAM. CODE ANN. §§ 8.054(d), 8.057 (modification of spousal maintenance order); *id.* §§ 156.101–.106 (modification of conservatorship, possession and access, or determination of child's residence); *id.* §§ 151.401–.409 (modification of child support). Granting a new trial would provide an opportunity for the trial court and

10

the parties in this case to resolve any disputed issues now rather than potentially having to do so piecemeal in the future, thereby preventing any delay.

For these reasons, we hold that the trial court erred in entering a no-answer default final decree of divorce and not ordering a new trial.

We sustain Davud's sole issue.

## Conclusion

We reverse the trial court's no-answer default final decree of divorce and order for conservatorship and child support and remand the case to the trial court for further proceedings consistent with this opinion.

Julie Countiss
Justice

Panel consists of Justices Kelly, Countiss, and Rivas-Molloy.

11