In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-21-00387-CV
_____

NANNETTE CARLEY, Appellant

V.

SAALWAECHTER, INC., Appellee

On Appeal from the 457th District Court
Montgomery County, Texas
Trial Cause No. 20-12-14893-CV

## MEMORANDUM OPINION

Under the Texas Tax Code, an owner of real property may redeem its ownership rights to property purchased at a tax-foreclosure sale by paying an amount prescribed by a statutory formula if they pay the statutorily prescribed amount within the time the statute prescribes, which begins to run when the deed issued to the purchaser is recorded.[1]

---

[1]Tex. Tax Code Ann. § 34.21 (Supp.).

In this appeal, the issue is whether the trial court erred following a trial to the bench in finding that the amount the owner tendered to redeem her property from a tax foreclosure sale represented "an insufficient payment" to satisfy what we refer to in the opinion as the statutory formula.[2]

We hold the trial court did not abuse its discretion in concluding the property's owner failed to tender an amount sufficient to substantially comply with the statutory formula. For that reason, we will affirm the trial court's judgment.

## Background

The property that is the subject of the dispute consists of a residential lot that we will refer to as the Property, which is described in the order authorizing the lot's sale as Lot 19, Rustic Oaks, in the Bartley Murray Survey, Abstract 343, Montgomery County, Texas. In March

---

[2]*Id.* § 34.21(a) (providing that an owner of real property sold at a tax sale may redeem the property "by paying the purchaser the amount the purchaser bid for the property, the amount of the deed recording fee, and the amount paid by the purchaser as taxes, penalties, interest, and costs on the property, plus a redemption premium of 25 percent of the aggregate total if the property s redeemed during the first year of the redemption period"). The term *costs* is defined to include the ("amount reasonably spent by the purchaser for maintaining, preserving, and safekeeping the property").

2019, five taxing entities obtained a judgment and decree of sale against the Property's owner, Nannette Carley. That judgment and the resulting decree of sale were based on the ad valorem taxes levied against the Property by five taxing entities that Carley, as the owner of the property, had been assessed but failed to pay. The judgment lien awarded to the taxing entities against the Property totaled $44,204. The judgment against the Property describes the tax units' claims as "valid claims for delinquent taxes, penalties, interest, and costs allowed by law[.]"[3]

When Carley failed to cure the lien, a Montgomery County constable conducted a tax foreclosure sale based on a court order, which authorized the sale. Saalwaecther Inc. ("SI") was the highest bidder for the property at the sale, bidding $75,000 for the Property. On January 27, 2020, and based on the terms of the auction, Chris Jones (in his capacity as a Montgomery County Constable) signed a Constables Deed conveying the Property to SI.

---

[3]The five taxing entities listed in the judgment are the Tomball Independent School District, Montgomery County, the Montgomery County Hospital District, Montgomery County ESD 10, and Lone Star College. The judgment creating the lien was signed by the 284th District Court of Montgomery County, Trial Court Cause Number 17-11-13325. For simplicity, the monetary figures discussed in the opinion have been rounded to whole numbers.

In February 2020 and over SI's objections, Carley returned to the Property and moved back into the home. When Carley refused SI's demand to vacate, SI filed a Motion for Restraining Order and Temporary Injunction. Following a March 2021 hearing, the trial court signed an order granting SI's request for temporary injunctive relief. The trial court gave Carley twenty-one days to vacate the Property and ordered SI to post a $100 bond.

In May 2020, Carley, through her attorney, contacted employees or agents of SI and advised that she desired to redeem the Property. Her attorney asked SI to account for the funds "you have spent for the tax sale and related expenses so that Ms. Carley may make [an] offer to redeem the [P]roperty from you in accordance with the Texas Property Code." According to SI's petition, SI responded to Carley's request and advised her that as of July 1, 2020, SI had spent $133,783 on the Property.

In November 2020, Carley tendered $101,650 to the Montgomery County Tax-Assessor Collector together with an "Affidavit of Facts" in which she represented that she was tendering the "correct amount" to redeem the Property. In the "Affidavit of Facts," Carley also represented

4

that she and SI did not agree "on the amount owed." Carley's Affidavit of Facts starts with her statement: "I Nannette Carley, do affirm the statements below are true and correct." Although the Affidavit of Facts includes a signature by a notary, the notary's certificate states: "This instrument was acknowledged before me on November 3, 2020 by Nannette Carley." Finally, the information included in Carley's Affidavit of Facts doesn't explain the factual basis for Carley's claim that $101,650 is the "correct amount" to redeem the Property from the tax-foreclosure sale.

Relying on Carley's Affidavit of Facts and payment, Montgomery County's Tax Assessor-Collector gave Carley a "Redemption Receipt."[4] On November 4, 2020, the Redemption Receipt was filed in the real property records of Montgomery County. That same day, Carley went to the Property and demanded that SI's agents or employees leave. When

---

[4]Under section 34.21(f-1) of the Tax Code, the "assessor-collector who receives an affidavit and payment . . . shall accept that the assertions set out in the affidavit are true and correct. The assessor-collector receiving the payment shall give the owner a signed receipt witnessed by two persons. The receipt, when recorded, is notice to all persons that the property described has been redeemed." *Id*. § 34.21(f-1). We assume this was the purpose of the "Redemption Receipt" that the Tax-Assessor Collector issued here.

SI's agents refused, the police were called, and the officers told Carley that a judge would be needed to resolve the parties' dispute.

On December 4, 2020, SI sued Carley seeking a declaration that Carley's redemption was a nullity, did not vest title to the Property in Carley, and it sought to recover its attorney's fees and costs. In its petition, SI also claimed that Carley's "Affidavit of Facts" was defective because it lacked a jurat, and falsely represented that $101,650 was the "correct amount" when as of July 2020, Carley knew the amount she owed to redeem the Property was $133,783.

Carley, appearing pro se, filed an answer and counterclaim. Responding to SI's claim that the amount she tendered to redeem the property was insufficient, Carley alleged that SI was claiming it was entitled to costs other than those required to secure the Property and "make it compliant with the applicable codes during the redemption period[.]"

In October 2021, the trial court conducted a hearing on SI's motion for sanctions.[5] Carley didn't appear for the hearing. Following the

---

[5]The motion for sanctions is one of several motions that is not before us in the clerk's record. The order the trial court signed granting SI's Motion for Sanctions is in the clerk's record. The order reflects that

6

October hearing, the trial court "ORDERED that as a sanction for her conduct, each pleading that Nannette Carley filed in the above number and styled cause is struck." The trial court also ordered Carley to pay "Montgomery County, Texas the sum of $33,000 within 10 days from the date this Order is signed by delivering said sum to the Montgomery County Treasurer[.]" Carley, who is also pro se in her appeal, didn't assign error to the trial court's ruling on SI's Motion for Sanctions.

In November 2021, the trial court called the case to trial. Carley failed to appear for the trial. Just two witnesses testified for SI in the trial, David Saalwaecther and SI's company attorney, J. Randal Bays. David testified that SI received a Constables Deed after SI bought the Property at a tax foreclosure sale, which occurred on December 3, 2019. David explained that after SI bought the Property, either Carley or Carley's attorney contacted him around July 2020 and requested an accounting for the expenses SI incurred on the Property since it was purchased. According to David, he provided Carley (or her attorney) with what he described as the redemption amount for the Property. According

Carley didn't appear for the hearing on the motion for sanctions even though she had notice of the "date, time, and location of the hearing[.]"

7

to David, Carley's representation in November 2020 to the Tax Assessor-Collector that $101,650 was the "correct amount owed for redemption" was "not correct" for two reasons: first, $101,650 was not the correct amount; and second, in the months between July and November 2020, SI had additional costs, which SI claimed it was entitled to recoup from Carley before she could satisfy the statutory formula by paying what SI calculated under the statutory formula as the correct amount to the tax office.

David Saalwaecther identified Exhibit 9 as a summary that SI maintained in the ordinary course of business of the amounts SI paid for the Property, for insurance, and to maintain and repair the Property since December 3, 2019, plus the 25 percent statutory premium on the aggregate amount. According to David and based on the itemized summary, as of November 4, 2020, the redemption amount under the statutory formula when Carley attempted to redeem the Property totaled $165,462.[6]

---

[6]The exhibit lists the purchase price of the property, the amounts spent on maintenance and repairs, and the 25% redemption premium based on the "aggregate total" that a purchaser at a tax sale is authorized to collect when a property's owner exercises a right of redemption in the first year of the prescribed redemption period. *See id*. § 34.21(a).

For his part, Randal Bays testified the attorney's fees that his firm charged SI were reasonable, necessary, and incurred in the firm's handling of SI's suit. Bays explained that he was seeking a judgment of $17,147 in attorney's fees through the trial plus an additional award of $15,000 in attorney's fees should Carley appeal the judgment to the Court of Appeals.[7] Itemized billing records were admitted as exhibits to support Bays's testimony about the fees his firm charged SI.

When the trial ended, the trial court found in SI's favor, concluding: (1) the "Affidavit of Facts," which Carley provided to the Montgomery County Tax Assessor-Collector on November 4, 2020, is not an affidavit that authorized Montgomery County's Tax Assessor-Collector to issue the Redemption Receipt for the Property; (2) the Redemption Receipt issued for the Property is invalid, void, and of no force or effect, so it does not vest title to the Property in Carley; (3) the money Carley paid to the Montgomery County Tax Assessor-Collector for taxes, penalties, and interest on the Property to redeem it from foreclosure was an insufficient amount for that purpose; and (4) the true and rightful owner of the

---

[7] Bays also asked for additional conditional awards of attorney's fees if Carley appealed to the Texas Supreme Court.

Property is Saalwaechter Inc., the entity that purchased the Property at the tax-foreclosure sale. Finally, the trial court awarded SI $17,147 in attorney's fees, plus additional conditional awards of attorney's fees, which were made contingent on Carley exercising her right to appeal.

Carley, who is pro se in her appeal, filed a brief in which she raises nine issues. Four of Carley's issues—issues one, five, eight, and nine—argue the evidence is legally and factually insufficient to support the trial court's judgment. In Carley's second issue, she argues that the party that buys a property in a tax sale may not file a suit challenging an owner's exercise of their right of redemption after the property is redeemed under the Tax Code, section 34.21.[8] One of Carley's issues, issue three, contends the trial court erred in concluding that the "Affidavit of Facts" was not an affidavit because it doesn't contain a jurat—the certificate usually found at the end of an affidavit signifying that the person who signed the affidavit has sworn to the truth of the facts in the affidavit before an officer authorized to administer an oath.[9] In Carley's fourth issue, she

---

[8]*Id.*

[9]*See* Tex. Gov't Code Ann. § 312.011(1) (an affidavit is a "statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified by the officer under his seal of office").

argues that a $100 bond the trial court set when it granted SI's Motion for Temporary Injunction was insufficient because the Property was worth much more. In issue six, Carley argues that because the trial court lacked jurisdiction over her person and the Property, the trial court erred when it failed to grant her motion to dismiss. Last, in Carley's seventh issue, she claims that the trial court erred by considering photographs of the Property because she objected to them in the Motion in Limine on the grounds they were not properly authenticated.

Analysis

*Standard of Review*

For convenience, we will address Carley's factual sufficiency issues before addressing her other issues. We note that even though not requested, the trial court included several findings of fact and conclusions of law in its judgment. When parties haven't requested findings of fact and conclusions of law, we imply all the necessary findings needed to support the trial court's judgment, and we will uphold the judgment on any legal theory supported by the evidence.[10]

---

[10]S*ee Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 83 (Tex. 1992).

11

In a case tried to the bench, the trial court acts as the factfinder.[11] In that role, the trial court decides what witnesses are credible, weighs the testimony, and resolves any inconsistencies in the evidence when reaching its verdict.[12] When reviewing the trial court's findings for legal and factual sufficiency, we use the same standards that apply to a case tried by a jury.[13]

In a legal sufficiency review, "the final test for legal sufficiency [is] whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review."[14] Unlike a factual sufficiency review, we consider and weigh all the evidence and will set aside a finding only if the evidence that supports it is so weak that it makes the finding clearly wrong and unjust.[15] Stated another way, we may not set aside a finding challenged in an appeal unless the implied findings that support

---

[11]*McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).
[12]*Id.*
[13]*Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991).
[14]*See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).
[15]*Id.*

the verdict are so contrary to the overwhelming weight of the evidence that the findings being challenged are clearly wrong and unjust.[16]

In this case, the fact issue that Carley disputes is whether the evidenced supports the trial court's finding that she failed to tender the statutorily prescribed amount. Under Texas law, a party's substantial compliance with the statutorily prescribed formula for redeeming their property from a tax foreclosure sale "may satisfy the statute's demands."[17] When the dispute is over whether the amount the owner tendered substantially complied with the statutory formula, the reviewing court doesn't "engage in its own factual review, but decides whether the record supports the trial court's resolution of factual matters and defers to the trial court's factual determinations if it does."[18] But if the underlying facts are undisputed, the reviewing court determines "whether the trial court properly applied the law to the facts in reaching its legal conclusion."[19]

---

[16]*See Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *Cain*, 709 S.W.2d at 176.

[17]*Sorrell v. Estate of Carlton*, 593 S.W.3d 167, 173 (Tex. 2019).

[18]*Id*. at 174 (cleaned up).

[19]*Id*. (cleaned up).

Issues One, Five, Eight, and Nine

A. Does the evidence support the judgment?

Before the trial, the trial court struck all of Carley's pleadings. Carley, who was also pro se in the trial, didn't appear for the trial. On appeal, Carley hasn't challenged the trial court's pretrial ruling striking her pleadings.

Because the trial court struck Carley's answer, the factual allegations in SI's petition (except as to any unliquidated damages) were deemed admitted.[20] For that reason, in our review we have taken the following allegations in SI's petition as facts that were not disputed:

- Saalwaechter Inc. was the highest bidder for the Property in a court-ordered tax foreclosure sale, which occurred on December 3, 2019;

- On January 27, 2020, by a Constables Deed, Chris Jones, in his capacity as a Montgomery County Constable, conveyed the Property to Saalwaecther Inc.;

- In May 2020, Saalwaechter Inc., acting through its agents or employees, provided Carley a redemption price for the Property within the time required by the Tax Code;

---

[20]*See Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 183 (Tex. 2012) (noting that "the non-answering party in a no-answer default judgment is said to have admitted both the truth of facts set out in the petition and the defendant's liability on any cause of action properly alleged by those facts").

14

- In July 2020, Saalwaecther Inc. sent Carley a redemption amount for the Property after receiving a request from the attorney who represented her at that time.

- On November 4, 2020, Carley tendered $101,650 to the Montgomery County Tax Assessor-Collector and filed an affidavit with that office stating the "purchaser and I do not agree on the amount owed for redemption of said property."

- Saalwaecther Inc. did not demand that the Tax Assessor-Collector turn over the money that Carley tendered to redeem the Property to it as the purchaser of the Property in the tax sale.

- On December 4, 2020, Saalwaecther Inc. sued Carley in a petition in which it raised three claims: (1) a claim for declaratory judgment; (2) a claim alleging trespass to try title; and (3) an equitable claim seeking to quiet title to the Property.

SI's petition alleges that on July 1, 2020, SI provided Carley with the accounting she requested regarding the expenses it had incurred on the Property and "provided the requested information showing that Saalwaecther, Inc. had spent $133,782.99 on the Property as of July 1, 2020." Along with recouping the purchase price, penalties, interest, and costs that SI included in its figure of $133,783, the statutory formula allows the purchaser an additional "redemption premium of 25 percent

of the aggregate total" if the property's owner redeems the property within a year of the date the deed to the property was filed.[21]

The trial court found the amount Carley tendered to the tax office—$101,650—was an "insufficient payment to redeem the Property." That said, to determine whether the amount tendered is sufficient, the payment tendered must be compared to the amount required under the statutory formula. And under the statutory formula, "[o]nly the amounts included in the itemization provided to the owner may be allowed for purposes of redemption."[22] Here, the parties didn't request findings, so the appellate record doesn't include a finding that identifies the amount the trial court determined Carley owed after applying the statutory formula to the evidence admitted in the trial. Nonetheless, we must still conclude on this record that the trial court did not abuse its discretion when it concluded that SI established that Carley's tender of $101,650 wasn't sufficient to substantially comply with her obligations under the statutory formula.[23]

---

[21]Tex. Tax Code Ann. § 34.21(a).
[22]*Id.* § 34.21(i).
[23]*Id.*

As mentioned, the statutory formula doesn't allow amounts to be included as "costs for the purposes of redemption" unless they were included in the itemization.[24] The evidence before the trial court shows that SI provided Carley with an accounting on July 1, 2020. Therefore, when the trial court applied the statutory formula, we assume the trial court didn't include the amounts that SI included in Exhibit 9 for expenses that it paid to repair or maintain the Property after July 1, 2020, as those expenses could not have been properly included as "costs" under the statutory formula based on the evidence presented in the trial.

Yet even when we exclude the items on Exhibit 9 that SI incurred or paid after July 1, 2020, the trial court could have reasonably found that the line entry items on SI's itemization totaled $107,027 when SI provided Carley with an accounting for its expenses on the Property in early July 2020. In addition to that amount, the statutory formula allows SI to collect an additional 25% premium on the "aggregate total," or in this case a premium of $26,757 (.25 x $107,027). Thus, when we imply that the trial court applied the statutory formula to the evidence presented in the trial, we conclude the evidence shows that Carley's

---

[24]*Id.*

17

tender represents around 76% of the total sum the statutory formula demanded that she pay to redeem her Property from the tax-foreclosure sale.

We further conclude that based on Carley's deemed admissions, the trial court's finding that she received an accounting on July 1, 2020, is supported by the evidence.[25] Therefore, when Carley exercised her right to redeem the Property in November 2020, she was aware she was tendering a sum that was just 75% of what SI had incurred on the Property based on the accounting she received from SI. Based on these conclusions, we conclude the trial court's finding that Carley's tender was "an insufficient payment" is reasonable. Consequently, we hold the trial court did not abuse its discretion by concluding that Carley's tender did not substantially comply with the statutory formula.

After viewing the evidence in a neutral light, we further conclude the trial court's finding that Carley's payment was insufficient is not so contrary to the overwhelming weight of the evidence that it is wrong and unjust.[26] Finally, we cannot say that when the trial court applied the

---

[25]*See Paradigm Oil, Inc.*, 372 S.W.3d at 183.
[26]*See Plas-Tex, Inc.*, 772 S.W.2d at 445; *Cain*, 709 S.W.2d at 176.

statutory formula to the evidence that it erred in properly applying the law.[27]

## Issue Two

A. May a purchaser who acquires real property in a tax-foreclosure sale file a suit and challenge the property owner's exercise of their right of redemption, a right created by section 34.21 of the Tax Code?

According to Carley, the Tax Code doesn't provide for "setting aside a tax sale redemption" after the taxing unit issues a signed receipt acknowledging payment. We disagree.

First, we note that section 34.21(f-1) of the Tax Code requires the "assessor-collector who receives an affidavit and payment under Subsection (f) [to] accept that the assertions set out in the affidavit are true and correct."[28] Yet the legislature made the right of redemption in section 34.21 contingent on the owner "paying the *required amount* as prescribed by [section 34.21]."[29] At issue here is whether Carley paid *the required amount*.

---

[27]*See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).
[28]Tex. Tax Code Ann. § 34.21(f-1).
[29]*Id*. § 34.21(f) (emphasis added).

19

Second, the redemption statute shows the legislature contemplated there could be litigation over whether an owner tendered the *required amount*, so within the statute, the legislature chose to relieve tax assessor-collectors from liability "to any person for performing the assessor-collector's duties under this subsection in reliance on the assertions in an [owner's] affidavit."[30] In our opinion, the language of the statute shows the legislature contemplated litigation could arise between parties over whether the owner tendered the *required amount* given the complexity of the statutory formula and the rules the legislature created to govern the statute's application.

Third, nothing in sections 34.21, 34.22, or 34.23 of the Tax Code— all the sections that address redemption—purport to bar a purchaser from seeking relief in a court when a property owner fails to pay the *required amount* in redeeming their property from a tax sale to defeat the deed issued to the purchaser following the sale.[31] Thus, in *Sorrell v. Estate of Carlton*, the Texas Supreme Court reviewed a judgment in a case following a bench trial in which the issue was whether the amount

---

[30]*Id*. § 34.21(f-1).
[31]*Id*. §§ 34.21-.23.

that the owner tendered to the tax assessor-collector was sufficient to satisfy the statutory formula under the evidence admitted in the trial.[32] Nothing in that opinion suggests that a purchaser of real property sold in a tax-foreclosure sale is barred from filing suit to challenge whether the property's owner tendered the *required amount* under the legislatively prescribed formula.

## Issue Three

A. Does the record support the trial court's finding that the "Affidavit of Facts Nannette Carley provided to the Montgomery County Tax Assessor-Collector on November 4, 2020, is not an affidavit[?]"

The Government Code defines the term *affidavit* as "a statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office."[33] In the trial court, David Saalwaecther testified that the "Affidavit of Facts" Carley filed with the Tax Assessor-Collector didn't include a jurat, but instead contained only a verification as to the truth of the facts in the document.[34] On appeal, Carley argues

---

[32]*Sorrell*, 593 S.W.3d at 169, 170, 175.

[33]Tex. Gov't Code Ann. § 312.011(1).

[34]The "Affidavit of Facts" that Carley filed makes four positive assertions: (1) "The redemption period for this property has not expired[;]" (2) "I have contacted the purchaser of my home at [the address

21

that the trial court erred in finding that her Affidavit of Facts was defective because it doesn't have a proper jurat.

"A jurat is a certification by an authorized officer, stating that the writing was sworn to before the officer."[35] "While the Government Code requires that an affidavit be sworn to, it does not require a jurat or clause stating that the writing was sworn to before the officer."[36] Here, except as to Carley's statement that the "correct amount owed for redemption of said property is $101,650," the remaining facts that Carley included in her "Affidavit of Facts" were undisputed under the evidence SI presented in the trial. And, as to whether Carley tendered the "correct amount" as she claimed, the Tax Code doesn't require the owner to include a

---

for the home;]" (3) "The purchaser and I do not agree on the amount owed for redemption of said property[;]" and (4) "The correct amount owed for redemption of the property is $101,650.00." Items one through three were undisputed at trial and are undisputed in the appeal. The dispute both in the trial court and on appeal is primarily whether the amount Carley tendered to the tax office, $101,650, was the required amount or substantially complied with the required amount under Tax Code, section 34.21(a). *See* Tex. Tax Code Ann. § 34.21(a).

[35]*Mansions in the Forest, L.P. v. Montgomery Cty.*, 365 S.W.3d 314, 316 (Tex. 2012).

[36]*Id.* (citing Tex. Gov't Code Ann. § 312.011(1); *Perkins v. Crittenden*, 462 S.W.2d 565, 568 (stating that, while the statutory definition of "affidavit" requires that the affidavit be sworn to, it does not require "an authorized officer [to] attest[] to the oath")).

statement about whether the property's owner is tendering the "correct amount" or the "required amount" to redeem the property from the foreclosure sale.[37]

The legislature's decision not to require that an owner of real property swear that they have tendered the required amount owed on property sold in a tax foreclosure sale seems reasonable, as the owner who lost the property through foreclosure isn't the party that incurred the costs of repairing or maintaining the property after the foreclosure occurred. Stated another way, it would be difficult and perhaps in some cases impossible for the property's owner to determine if the costs incurred by the purchaser after the date of foreclosure were incurred, whether they were necessary, whether they were reasonable, or if they have been paid.

---

[37]Tex. Tax Code Ann. § 34.21(f) (providing the owners affidavit must state "(1) that the period in which the owner's right of redemption must be exercised has not expired; and (2) . . . that the owner and the purchaser cannot agree on the amount of redemption money due[.]" Consequently, section 34.21(f) allows an owner to redeem the real property by "paying the required amount as prescribed by this section," but it doesn't require the owner to swear that the amount the owner calculated is the correct amount before an officer authorized to administer an oath.

Nonetheless, since we have already concluded that the trial court didn't abuse its discretion by ruling for SI because Carley failed to tender the "required payment" under the Redemption Statute, we need not decide whether the trial court erred when it found that Carley's Affidavit of Facts didn't function as an affidavit because it lacked a proper jurat.[38] That's because even if we decided to resolve issue three in Carley's favor, she would not be entitled to a ruling from this Court reversing the trial court's judgment in light of our resolution of issues one, five, eight, and nine.[39]

## Issue Four

### A. Was the temporary injunction bond in an insufficient amount?

In issue four, Carley argues the trial court erred when it ordered SI to post a $100 temporary injunction bond because the "taking" of her "property under [SI's] failed petition warrant[ed] a bond near one million dollars." Yet here, as we have explained, the trial court has rendered a final judgment. The trial court's judgment didn't convert the temporary injunction into a permanent injunction, and the judgment states all

---

[38]*See id.*
[39]Tex. R. App. P. 47.1 (requiring opinions to address each issue that is necessary to resolving the appeal).

24

"relief requested by a party to this action that is not expressly given in this Final Judgment is denied."

When a trial court renders a final judgment, the appeal addressing the trial court's ruling on a temporary injunction "becomes moot."[40] We are not authorized to issue opinions on matters that are moot.[41]

Issue Six

A. Did the trial court possess jurisdiction over Carley and over the Property?

In issue six, Carley argues the trial court lacked jurisdiction over her and the Property because the trial court never ruled on the pretrial motions that she filed to dismiss SI's suit. We disagree.

It is black-letter law that "a district court has subject-matter jurisdiction to resolve disputes unless the Legislature divests it of that jurisdiction."[42] "District Court jurisdiction consists of exclusive,

---

[40]*Isuani v. Manske-Sheffield Radiology Grp.*, 802 S.W.2d 235, 236 (Tex. 1991).

[41]*See Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000) (explaining that because appellate courts do not have jurisdiction to render advisory opinions under article II, section 1 of the Texas Constitution, courts may not issue opinions on matters that have been mooted by the trial court's rendition of a final judgment); *see also* Tex. R. App. P. 47.1.

[42]*In re Oncor Elec. Delivery Co.*, 630 S.W.3d 40, 44 (Tex. 2021) (citing *In re Entergy Corp.*, 142 S.W.3d 316, 322 (Tex. 2004)).

appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body."[43] Thus, we must presume that the district court possessed the subject-matter jurisdiction it needed to resolve this claim.[44] This case concerns property rights, and "[t]ypically, the power to determine controverted rights to property by means of a binding judgment is vested in the judicial branch."[45]

SI's suit was assigned to the 457th District Court, a court of general jurisdiction.[46] Thus, the jurisdiction of the 457th District Court included civil matters "in which the amount in controversy is more than $500, exclusive of interest."[47] As a district court, the 457th District Court also had jurisdiction to "hear and determine any cause that is cognizable by courts of law or equity and [to] grant any relief that could be granted by either courts of law or equity."[48] Consequently, the 457th District Court

---

[43]Tex. Const. art. V, § 8.
[44]*Oncor*, 630 S.W.3d at 44.
[45]*Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 635 (Tex. 1996).
[46]Tex. Gov't Code Ann. §§ 24.007, 24,997, 24.6001.
[47]*Id*. § 24.007(b).
[48]*Id*. § 24.008.

had the jurisdiction necessary to sign the judgment at issue in the appeal, which granted SI's request to clear the cloud Carley created on the deed SI acquired in the tax sale under the process the legislature authorized for a tax sale to occur.[49] Carley's argument that SI didn't have standing to assert a claim to the Property is frivolous when it's undisputed that SI holds a Constables Deed to the Property, which was signed and filed of record in January 2020.

## Issue Seven

A. Did the trial court err in admitting photographs of the Property over the objections that Carley raised to their admission in her Motion in Limine?

In Carley's seventh issue, she complains that she filed a Motion in Limine that the trial court "disregarded[,]" and allowed SI to introduce "pictures purporting to show damages to the [P]roperty which were not authenticated [that] were insufficient to defeat [her] witness' testimony [about] the condition of the [P]roperty as well as appellant Carley's own pictures revealing the [P]roperty was left in a clean and undamaged

---

[49]*See* Tex. Const. art. V, §§ 1, 8; Tex. Gov't Code Ann. §§ 24.007, 24.008.

condition with appellant Carley competent to authenticate her own pictures, to wit: Rule 901."

The record shows that Carley filed her Motion in Limine approximately two months before the trial. Yet the record doesn't show that Carley ever obtained a hearing or a ruling on her motion. And as mentioned, Carley didn't attend the trial, so no objections were lodged to the photographs of the Property when SI's attorney offered them into evidence in the trial.

Even if Carley had obtained a hearing and ruling on her motion in limine, it is well established that rulings on motions in limine are not sufficient to preserve a party's claim of error for a later appeal.[50] That's because the purpose of "such a motion is to prevent the asking of prejudicial questions and the making of prejudicial statements in the presence of the jury without seeking the trial court's permission."[51] To preserve a claim for an appeal, a party must bring the claim to the trial court's attention through a *timely* request, objection, or motion, which as

---

[50]*Wackenhut Corp. v. Gutierrez*, 453 S.W.3d 917, 920 n.3 (Tex. 2015); *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 425 (Tex. 1998); *Miranda-Lara v. Rebert*, No. 09-18-00325-CV, 2020 Tex. App. LEXIS 7001, at *4 (Tex. App.—Beaumont Aug. 31, 2020, no pet.).

[51]*Wackenhut*, 453 S.W.3d at 920 n.3 (cleaned up).

to a photograph requires the party to object to the photograph when it is offered into evidence at trial since that's when the trial court is in the best position to rule on the merits of the party's objection.[52]

## Conclusion

Because Carley's issues lack merit, they are overruled. The trial court's judgment is,

AFFIRMED.

HOLLIS HORTON
Justice

Submitted on August 21, 2023
Opinion Delivered January 18, 2024

Before Horton, Johnson and Wright, JJ.

---

[52]*See* Tex. R. App. P. 33.1 (emphasis added).